In the Matter of the Application of ORLANDO BALDI, Respondent, for a Peremptory Mandamus Order against JOHN F. GILCHRIST, as License Commissioner of the City of New York, Appellant.

First Department, March 2, 1923.

**Municipal corporations — mandamus to compel issuance of license to taxicab driver — commissioner of licenses of city of New York has power, under Code of Ordinances, chapter 14, article 8, §§ 82 and 90, to refuse to issue license to one previously convicted of felony — license properly refused to applicant who had been pardoned of felony.**

The commissioner of licenses of the city of New York, in view of the prevailing wave of crimes of violence in said city, has the power under sections 82 and 90 of article 8 of chapter 14 of the Code of Ordinances to make a rule that a license shall not be issued to a taxicab driver who has been convicted of a felony.

Accordingly, the license commissioner will not be compelled by mandamus to issue a license to the petitioner, who had been previously convicted of a felony, even though he had been granted a pardon and restored to citizenship by the Governor.

APPEAL by the defendant, John F. Gilchrist, from a peremptory mandamus order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of June, 1922, directing the defendant to issue a taxicab driver's license to the petitioner.

*George P. Nicholson,* Corporation Counsel [*Henry J. Shields* of counsel; *John F. O'Brien* and *John Lehman* with him on the brief], for the appellant.

*Charles Novello,* for the respondent.

DOWLING, J.:

Respondent held a taxicab license which expired in March, 1922. He applied to the appellant for a renewal thereof, and that official refused to issue it for the reason that the respondent had been convicted of a felony in 1914. Thereupon respondent instituted this proceeding, basing his right to the issuance of a mandamus order on the fact that the Governor of the State of New York, on March 9, 1920, had granted him a pardon and restored him to citizenship. The appellant showed in his answering affidavit that he denied the application for a renewal of the license pursuant to a general rule adopted because of the conditions which existed at the time. The answering affidavit showed that at the time respondent applied for a renewal of his license a movement was under agitation for the closer supervision of the operators of taxicabs. This movement grew out of the facts developed in the

investigation of the then prevailing wave of crimes of violence, the conditions having become so grave that the matter gave rise to a grand jury investigation which resulted in a presentment on October 28, 1920. From this it appeared that the number of drivers' licenses issued between January 1 and September 8, 1920, was 12,527. The hearings held by the commissioner to and including September 30, 1920, were 2,628. The licenses of 543 drivers were suspended, 39 were revoked and 445 applications were rejected because of adverse police records. The matter was taken up by several city magistrates, who issued statements in the press urging the adoption of the policy referred to above. Among others, Chief City Magistrate William McAdoo issued a statement in which it appeared that out of 7,500 applicants for renewals of licenses as hack drivers between August, 1919, and January, 1920, more than 500 had been convicted of crime, 103 of grand larceny, 48 of burglary, 80 of felonious assault, 20 of homicide, 6 of abduction, 28 of assault and robbery, 177 of robbery, 20 of possessing pistols, 20 of having narcotics, 27 of assaulting women passengers, 13 of criminal assault, 23 of intoxication while operating automobiles; and 1 of maintaining a disreputable resort. These facts are not controverted.

As a solution of the difficulty it was suggested that taxi licenses be refused to applicants who had been convicted of a felony, and that plan was given wide publicity. The appellant requested the advice of the district attorneys of the counties within the city, and they advised the adoption of the plan. Thereafter the appellant made the rule that applications for taxi licenses made by applicants who had been convicted of a felony should be denied. Following out that rule, respondent's application was denied by appellant. Respondent thereupon applied for, and has obtained, a peremptory mandamus order requiring appellant, as license commissioner of the city of New York, to issue to respondent a license as taxicab driver, and from that order the present appeal was taken.

The provisions of law under which the commissioner of licenses acted are to be found in the Code of Ordinances of the City of New York (Chap. 14, art. 8), and so far as material to the present appeal, read as follows:

" § 82. Jurisdiction. The licensing and inspecting of public hacks, the inspecting and sealing of taximeters, the examining of applicants for licenses to drive such public hacks, and the licensing of drivers, as hereinafter provided in this article, and the enforcing of the provisions of this article, shall be under the control of the commissioner of licenses. * * *

" § 90. Drivers' licenses; application for. Every person driving a public hack must be licensed as such. Each applicant for a driver's license must    *    *    *

" (f) Fill out, upon a blank form to be provided by the department, a statement giving his full name, residence, places of residence for 5 years previous to moving to his present address, age, color, height, color of eyes and hair, place of birth, length of time he has resided in the city, whether a citizen of the United States, places of previous employment, whether married or single, whether he has ever been convicted of a felony or a misdemeanor, whether he has been summoned to court, whether he has previously been licensed as a driver or chauffeur, and, if so, whether his license has ever been revoked, and for what cause, which statement shall be signed and sworn to by the applicant and filed in the department, as a permanent record. Any false statement made by applicant for a license shall be promptly reported by the commissioner to the district attorney of the county in which the application was made.

" The commissioner is hereby authorized and empowered to establish such additional rules and regulations governing the issue of drivers' licenses, not inconsistent herewith, as may be necessary and reasonable."

Licenses required under city ordinances are not merely a means of collecting a tax, but are a means of enforcing good order. (*People ex rel. Houston* v. *Mayor, etc.,* 7 How. Pr. 81.)

I am of the opinion that under the conditions disclosed by the record, the determination of the commissioner not to issue licenses as taxicab drivers to those who had been convicted of a felony, was a valid, proper and reasonable exercise of his power, and necessary in the interest of the public. The courts are always loath to exercise a power of review which will substitute their discretion for that of the official in whom discretion is primarily reposed. As was said in *People ex rel. Schwab* v. *Grant* (126 N. Y. 473): " In the government of the affairs of a great municipality many powers must necessarily be confided to the discretion of its administrative officers, and it can be productive only of mischief in the treatment of such questions to substitute the discretion of strangers to the power in place of that of the officers best acquainted with the necessities of the case and to whom the Legislature has specially confided their exercise." (See, also, *Message Photo-Play Co., Inc.,* v. *Bell,* 179 App. Div. 13.)

Respondent contends that because he was pardoned by the Governor, no further consequences should follow his conviction of crime. But the executive act did not obliterate the fact of the

conviction. As was said in *Roberts* v. *State* (160 N. Y. 217): " It is manifest that the appellant's pardon and restoration to the rights of citizenship had no retroactive effect upon the judgment of conviction which remains unreversed and has not been set aside. We think the effect of a pardon is to relieve the offender of all unenforced penalties annexed to the conviction, but what the party convicted has already endured or paid, the pardon does not restore. When it takes effect, it puts an end to any further infliction of punishment, but has no operation upon the portion of the sentence already executed. A pardon proceeds not upon the theory of innocence, but implies guilt." (See, also, *People* v. *Price*, 53 Hun, 185; affd., on opinion below, 119 N. Y. 650; *People* v. *Carlesi*, 154 App. Div. 481; affd., on opinion below, 208 N. Y. 547.)

There is no claim that the appellant herein has acted arbitrarily or in bad faith so far as the respondent is concerned, or has been guilty of any discrimination against him. He is simply enforcing a regulation clearly for the benefit and protection of the public.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion for a mandamus order denied, with ten dollars costs.

CLARKE, P. J., PAGE, MERRELL and FINCH, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.