[No. 19955.    Department One.    July 12, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v. LINDA BUR-
FIELD HAZZARD, *Appellant*.[1]

[1] PARDON (2)—CONSTRUCTION AND OPERATION—RESTORATION OF
LICENSE PRIVILEGE. An unconditional pardon, restoring a con-
victed physician to "all rights and privileges forfeited by reason
of the former conviction," does not restore her to the right to
practice medicine, where her license to practice was rescinded
by the state medical board upon the strength of the record of
the former conviction.

Appeal from a judgment of the superior court for
Kitsap county, French, J., entered February 1, 1926,
upon agreed facts, imposing a fine $100 upon convict-
ing accused of practicing medicine without a license.
Affirmed.

*Marion Garland,* for appellant.

*Ray R. Greenwood,* for respondent.

ASKREN, J.—This matter was submitted to the trial
court upon stipulation and, from an adverse decision,
the defendant appeals.

The material facts stipulated are: The defendant
Hazzard, in 1912, was the holder of a license issued by
the state of Washington authorizing her to practice
the art of healing. In that year, she was convicted of
manslaughter, and sentenced to the penitentiary. Upon
the strength of the record of conviction, the state
medical board revoked her license. She was later
pardoned by the governor. The material portion of
the pardon, necessary to be observed in this inquiry,
is as follows:

"Now, Therefore, I, Ernest Lister, Governor of the
state of Washington, by virtue of the authority in me

vested, do hereby pardon the said Linda Burfield Hazzard and restore her to all the rights and privileges she forfeited by reason of her conviction and confinement.''

After the pardon, appellant commenced to practice again, upon the theory that the issuance of the pardon automatically restored the license to practice.

[1] Counsel for both sides have narrowed the inquiry here to the sole question of whether an unconditional pardon has the effect of restoring to one convicted of a crime a license to practice the art of healing, if the revocation thereof was upon the ground of conviction of that crime.

The Constitution, art. III, § 11, provides: ''The governor shall have power to remit fines and forfeitures under such regulations as may be provided by law.'' The legislature has not seen fit to enact any regulations upon the exercise of the power, so it must be assumed that the chief executive has been granted that full power of pardon, unobstructed in any manner, that reasonably follows with reference to remitting fines and forfeitures.

Counsel for appellant claim that the words contained in the pardon, ''all the rights and privileges she forfeited,'' show a clear indication to restore the license to practice, since such a license gives to one who holds it a right and privilege. But, in construing the words of the pardon, it must be borne in mind that the Constitution only gives the power to remit ''fines and forfeitures,'' and that the words in the pardon cannot be construed any stronger than if it read, that appellant was restored to all she had forfeited by reason of conviction and confinement. The very essence of a pardon is forgiveness or remission of penalty. Now, if the revocation of the license of appellant can

be said to be a portion of the penalty provided by law upon conviction of crime of manslaughter, then it might reasonably be argued that the pardon which releases from the penalty would return the license.

It is conceded that the revocation of the license is not a part of the punishment provided by law for the crime of manslaughter, for the license may be revoked for the commission of acts amounting to manslaughter, although there be no conviction thereof. It is urged, however, that, when the license is revoked because of the commission of the crime of manslaughter, in effect, it is a punishment therefor, since it precludes appellant from pursuing her profession. In this connection is cited *Ex parte Garland,* 71 U. S. 333. It is true that, in that case, the court held that any act which excludes one from the ordinary avocations and professions of life for past conduct could be regarded in no other light than a punishment for such conduct.

That decision has been robbed of much of its virility by later decisions of the court, notably *Hawker v. People of State of New York,* 170 U. S. 189, where the court had before it a case involving the right of the state to exclude one from the practice of medicine upon the ground of conviction of crime, even after he had suffered the punishment pronounced. It was there held that such a right was well within the police power of the state in the performance of its duty to protect the public against those of bad character. The court said:

"On the one hand it is said that defendant was tried, convicted and sentenced for a criminal offense. He suffered the punishment pronounced. The Legislature has no power to thereafter add to that punishment. The right to practice medicine is a valuable property right. To deprive a man of it is in the nature of punishment, and after the defendant has once fully

atoned for his offense a statute imposing this additional penalty is one simply increasing the punishment for the offense, and is *ex post facto.*

"On the other, it is insisted that within the acknowledged reach of the police power, a state may prescribe the qualifications of one engaged in any business so directly affecting the lives and health of the people as the practice of medicine. It may require both qualifications of learning and of good character, and, if it deems that one who has violated the criminal laws of the state is not possessed of sufficient good character, it can deny to such a one the right to practice medicine, and, further, it may make the record of a conviction conclusive evidence of the fact of the violation of the criminal law and of the absence of the requisite good character."

The court also took occasion in that case to explain *Ex parte Garland,* the broad statement in which had given rise to much misunderstanding as to the effect thereof, saying:

" 'They [*Ex parte Garland* and *Cummings v. State of Missouri*] only determine that one who is in the enjoyment of a right to preach and teach the Christian religion as a priest of a regular church, and one who has been admitted to practice the profession of law, cannot be deprived of the right to continue in the exercise of their respective professions by the exaction from them of an oath as to their past conduct, respecting matters which have no connection with such professions.' "

Appellant argues that the pardon requires us to assume that the governor investigated the facts and found that the appellant was innocent of the crime, and that its effect, therefore, is to restore her good character. To assume that all, or even a major number of, pardons are issued because of innocence of the recipients is not only to indict our judicial system, but requires us to assume that which we all know to be

untrue. The very act of forgiveness implies the commission of wrong, and that wrong has been established by the most complete method known to modern civilization. Pardon may relieve from the disability of fines and forfeitures attendant upon a conviction, but they cannot erase the stain of bad character, which has been definitely fixed. *State v. Serfling,* 131 Wash. 605, 230 Pac. 847.

In *Baldi v. Gilchrist,* 204 App. Div. 425, 198 N. Y. Supp. 493, a pardoned felon was denied a license to operate a taxicab upon the ground that his previous conviction of crime established a bad character. The supreme court said:

"Respondent contends that, because he was pardoned by the Governor, no further consequences should follow his conviction of crime. But the executive act did not obliterate the fact of conviction. As was said in *Roberts v. State,* 160 N. Y. 217, 54 N. E. 678:

" 'It is manifest that the appellant's pardon and restoration to the rights of citizenship had no retroactive effect upon the judgment of conviction which remains unreversed and has not been set aside. We think the effect of a pardon is to relieve the offender of all unenforced penalties annexed to the conviction, but what the party convicted has already endured, or paid, the pardon does not restore. When it takes effect, it puts an end to any further infliction of punishment, but has no operation upon the portion of the sentence already executed. A pardon proceeds not upon the theory of innocence, but implies guilt!' "

In *People ex rel. Deneen v. Gilmore,* 214 Ill. 569, 73 N. E. 737, it was held that a pardon, issued to an attorney after conviction and sentence, did not efface the moral turpitude established by conviction, the court saying:

"The crime of which the respondent was convicted and imprisoned in the penitentiary of the state of Missouri was an infamous offense, which involved not

only moral turpitude, but also the lack of professional integrity. The conviction of that crime had the effect to degrade him, and to establish that he was of bad moral character as a man and as a lawyer. The pardon granted him by the then acting Governor of the state of Missouri did not efface the moral turpitude and want of professional honesty involved in the crime, nor obliterate the stain upon his moral character.''

In *In re Spenser,* 5 Sawyer 195, the court was called upon to decide whether a pardon obliterated and wiped out the fact of conviction of crime, so that it could not be urged against an applicant for citizenship. It was there said:

"The offender is purged of his guilt, and thenceforth he is an innocent man; but the past is not obliterated nor the fact that he had committed the crime wiped out.

"Apply these principles to this case. By the commission of the crime the applicant was guilty of misbehavior, within the meaning of the statute, during his residence in the United States. The pardon has absolved him from the guilt of the act, and relieved him from the legal disabilities consequent thereupon. But it has not done away with the fact of his conviction. It does not operate retrospectively. The answer to the question: Has he behaved as a man of good moral character? must still be in the negative; for the fact remains, notwithstanding the pardon, that the applicant was guilty of the crime of perjury—did behave otherwise than as a man of good moral character.''

See, also, *People ex rel. Johnson v. George,* 186 Ill. 122, 57 N. E. 804, and *People ex rel. Colorado Bar Ass'n v. Weeber,* 26 Colo. 229, 57 Pac. 1079.

The doctrine has generally been accepted by the courts that a pardon, unless limited, restores one to the customary civil rights which ordinarily belong to a citizen of the state. These are generally stated to be the right to hold office, to vote, to serve on a jury,

to be a witness, and, in earlier times, the return of property forfeited by reason of, and punishment for, conviction of crime. But it does not restore offices forfeited, nor property or interests vested in others in consequence of conviction. *In re ————, An Attorney,* 86 N. Y. 563.

Our investigation has disclosed no decision by a court of last resort, other than *Ex parte Garland, supra,* holding that it further restores the extraordinary right to practice any of those professions which, because of their peculiar relation to the public, require that those holding licenses must have the important qualification of good character.

Appellant urges that the license to practice is a property right, and cites our holding in *State ex rel. Fryberg v. Maybury,* 134 Wash. 641, 236 Pac. 566, where, under the authority of *Hewitt v. Board of Medical Examiners,* 148 Cal. 590, 84 Pac. 39, we said that the right to practice is "a valuable property right." But the expression was not used in the sense in which those words are sought to be here construed by appellant. In that case it was sought to revoke, without cause, a license regularly issued and we held that the right to continue to hold it was such a property right that it could not be taken away except for cause. It was not intended to hold that it was such a property right, that it could not be taken away by reason of the failure of the holder thereof to maintain that good character required by law of the holder thereof. The right to hold a public office is also in a sense a valuable property right, but it has almost universally been held that the holder thereof may be removed upon conviction of crime, and that a pardon does not restore the former holder thereto. *State ex rel. Webb v. Parks,* 122 Tenn. 230, 122 S. W. 977; *State v. Carson,* 27 Ark. 469.

There is a wide distinction between the right which one, whether felon or free, has to hold his own property against the world and deny even the state the right to take it from him without compensation therefor, and that other right to practice a profession which demands peculiar qualifications in order to protect the public, and requires a license. As to the latter, there can be, strictly speaking, no inherent right thereto, if considered apart from the question of qualifications. One qualified in all respects has a right to a license, but one unqualified has no right whatever.

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and BRIDGES, JJ., concur.