[S. F. No. 15188.   In Bank.—January 30, 1935.]

In the Matter of the Application of MORRIS LAVINE for Reinstatement to The State Bar of California.

Morris Lavine, *in pro. per.*, for Petitioner.

Norman S. Sterry, Louis W. Myers and Philbrick McCoy for Respondent.

WASTE, C. J.—It appears that in 1918 the petitioner was admitted to practice law in all the courts of this state. This privilege was taken from him in 1930 by his disbarment, under order of this court entered pursuant to the provisions of section 299 of the Code of Civil Procedure, upon his conviction of attempted extortion, an offense involving moral turpitude, for which offense he was sentenced to imprisonment in the county jail for one year, which term he served, and to pay a fine of five thousand dollars. On January 16, 1934, the Governor granted petitioner a full pardon, the fine being thereby remitted. Based solely upon this pardon, and without any effort being made to establish his moral rehabilitation, petitioner now asks for reinstatement to the bar of California. He refers us to the so-called "pardon statute" (Stats. 1933, p. 2476), section 1 of which provides as follows: "In all cases in which a full pardon has been granted by the Governor of this State, or will hereafter be granted by said Governor to a person convicted of an offense to which said pardon applies, it shall operate to restore to such convicted person, all the rights, privileges, and franchises of which he has been deprived in consequence of said conviction or by reason of any matter involved therein; provided, that nothing herein contained shall abridge or impair the power or authority conferred by law on any board or tribunal to revoke or suspend any such right, privilege or franchise for any act or omission not involved in said conviction; provided, further, that nothing in this act shall affect any of the provisions of the Medical Practice Act or the power or authority conferred by law on the Board of Medical Examiners therein, or the power or authority conferred by law upon any board that issues a certificate which permits any person or persons to apply his or their art or profession on the person of another."

Many arguments addressed to the constitutionality of this statute are advanced and presented at great length in the briefs filed by the petitioner and the representatives of The State Bar. We have read the several briefs and have in mind the numerous contentions therein advanced. We shall not attempt to treat and dispose of them individually, except in so far as our conclusion achieves this result, but will direct our attention to the reasoning and authorities

which, in our opinion, are determinative of the present application. Reduced to its simplest terms the present proceeding requires us to determine whether a pardon standing alone and unsupported by evidence of moral rehabilitation, requires this court, wherein is vested the power to admit, suspend or disbar attorneys-at-law, to reinstate an attorney who has forfeited his right to practice by reason of his conviction of an offense involving moral turpitude.

Prior to the adoption of the 1933 statute, above quoted, it was held that the granting of a full pardon to an attorney so disbarred did not, of itself, entitle such attorney to reinstatement. (*Matter of Application of Riccardi*, 64 Cal. App. 791 [222 Pac. 625].) Inasmuch as the privilege of practicing law is one extended to an individual solely by virtue of an order of this court, and is not one governed by a "board", within the meaning of the proviso of the above statute, we are satisfied that the language of said statute is sufficiently comprehensive to achieve the result for which petitioner contends and we therefore find it unnecessary to attach any weight to a letter, copy of which accompanies the petition, addressed to petitioner by the author of the bill introduced in the legislature, and which later became the statute here involved, wherein it is stated that the "object in introducing this bill [was] to bring about the full restoration to all rights and privileges, and particularly to the restoration of the practice of law of those who had been convicted of a crime and upon a review of the cause by the Governor, had been granted a full pardon". In construing a statute we are to be governed solely by the language employed, and are not bound by the opinions of individual members of the legislative body. (*Ex parte Goodrich*, 160 Cal. 410, 417 [117 Pac. 451, Ann. Cas. 1913A, 56].) The statute obviously having as one of its principal purposes the reinstatement of attorneys receiving an executive pardon of the offense upon conviction of which their disbarment was ordered, we pass now to a consideration of the propriety of legislation purporting to have this effect.

The decisions of this court indicate, and they are supported by a wealth of authority from other jurisdictions, that the right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and par-

taking of the nature of a public trust (*Townsend* v. *State Bar*, 210 Cal. 363, 364 [291 Pac. 837]), the granting of which privilege to an individual is everywhere conceded to be the exercise of a judicial function. (*Brydonjack* v. *State Bar*, 208 Cal. 439, 443 [281 Pac. 1018, 66 A. L. R. 1507].) This is necessarily so. ▉ An attorney is an officer of the court and whether a person shall be admitted is a judicial, and not a legislative, question. However, notwithstanding the inherent power of the courts to admit applicants for licenses to practice law it is generally conceded that the legislature may prescribe reasonable rules and regulations for admission to the bar which will be followed by the courts. The regulations so prescribed must, as stated, be reasonable and shall not deprive the judicial branch of its power to prescribe additional conditions under which applicants shall be admitted, nor take from the courts the right and duty of actually making orders admitting them. (*In re Chapelle*, 71 Cal. App. 129, 131, 132 [234 Pac. 906]; *Brydonjack* v. *State Bar, supra.*) ▉ In short, such legislative regulations are, at best, but minimum standards unless the courts themselves are satisfied that such qualifications as are prescribed by legislative enactment are sufficient. The requirements of the legislature in this particular are restrictions on the individual and not limitations on the courts. They cannot compel the courts to admit to practice a person who is not properly qualified or whose moral character is bad. In other words, the courts in the exercise of their inherent power may demand more than the legislature has required. (*In re Chapelle, supra; In re Bailey*, 30 Ariz. 407 [248 Pac. 29, 30]; *In re Day*, 181 Ill. 73 [54 N. E. 646, 650, 50 L. R. A. 519]; *In re Opinion of the Justices*, 279 Mass. 607 [180 N. E. 725, 727, 81 A. L. R. 1059]; *In re Splane*, 123 Pa. 527 [16 Atl. 481, 483].)

▉ These principles are well settled. It is equally well established that an application for reinstatement of an attorney disbarred by a judgment of a court of competent jurisdiction, as was petitioner, must be treated as an application for admission to practice and not as an application to vacate the order of disbarment. As such it must be addressed to the court having jurisdiction to admit an attorney to practice (*Danforth* v. *Superior Court*, 49 Cal. App. 303, 305 [193 Pac. 272]), and must be accompanied by a satis-

factory showing of the moral rehabilitation of the applicant.

The mere presentation of a pardon, without more, by an applicant, situated as is petitioner here, does not, in our opinion, satisfy the burden resting on him of showing that he possesses that moral stamina essential to one qualified to engage in the practice of the law, for it has been held that while a pardon obliterates an offense to such an extent that for all legal purposes the one-time offender is to be relieved in the future from all its results, it does not obliterate the act itself. It puts the offender in the same position as though what he had done never had been unlawful, but it does not close the judicial eye to the fact that once he had done an act which constituted the offense. (*United States* v. *Swift,* 186 Fed. 1002, 1016; *People* v. *Weeber,* 26 Colo. 229 [57 Pac. 1079, 1080].) In other words, while the effect of a pardon is to relieve the offender of the penal consequences of his act, it does not restore his character and cannot reinvest a person with those qualities which are absolutely essential for an attorney-at-law to possess or rehabilitate him in the trust and confidence of the court. (*Nelson* v. *Commonwealth,* 128 Ky. 779 [109 S. W. 337, 338–340, 16 L. R. A. (N. S.) 272].) The very essence of a pardon is forgiveness or remission of penalty. (*State* v. *Hazzard,* 139 Wash. 487 [247 Pac. 957, 47 A. L. R. 538].) It implies guilt and does not wash out the moral stain. (*Nelson* v. *Commonwealth, supra.*) We recognize that authorities to the contrary are available but we are neither impressed with nor bound by their reasoning.

With these principles before us we conclude that in so far as the 1933 "pardon statute" purports to reinstate, or to direct this, or any other, court to reinstate, without any showing of moral rehabilitation, an attorney who has received an executive pardon of the offense upon the conviction of which his disbarment was based, the same is unconstitutional and void as a legislative encroachment upon the inherent power of this court to admit attorneys to the practice of the law and is tantamount to the vacating of a judicial order by legislative mandate.

A somewhat analogous situation was presented in *State* v. *Cannon,* 206 Wis. 374 [240 N. W. 441, 450], wherein an attorney was suspended from practice for two years. His reinstatement at the end of the period was made conditional

upon his payment of the costs of the proceedings and desisting during that time from a repetition of improper conduct. He subsequently applied for readmission to the court alleging his good conduct during the period of suspension but without showing the payment of the costs and in support of his claim for reinstatement relied upon an act of the legislature passed after his suspension which provided that the costs imposed upon him by the judgment were remitted by the state and authorizing him ''henceforth to exercise all the rights and privileges of a duly licensed member of the bar''. In declaring the statute unconstitutional the court declared: ''We think the separation of sovereign power by which the Constitution assigns the legislative power to the Legislature and the judicial power to the courts, with the purpose of making each department supreme and independent in its respective field, accords to the Legislature the power of exacting of those who shall be admitted to the practice of the law such qualifications as the Legislature shall deem sufficient to protect the public from the evils and mischiefs resulting from incompetent and characterless attorneys, which qualifications so prescribed must be respected by the courts. The courts cannot and should not license any as attorneys at law who do not possess the qualifications deemed by the Legislature necessary for the protection of the public interest. . . . While the Legislature may legislate with respect to the qualifications of attorneys, its power in that respect does not rest upon any power possessed by it to deal exclusively with the subject of the qualifications of attorneys, but is incidental merely to its general and unquestioned power to protect the public interest. When it does legislate fixing a standard of qualifications required of attorneys at law in order that public interests may be protected, such qualifications constitute only a minimum standard and limit the class from which the court must make its selection. Such legislative qualifications do not constitute the ultimate qualifications beyond which the court cannot go in fixing additional qualifications deemed necessary by the court for the proper administration of judicial functions. There is no legislative power to compel courts to admit to their bars persons deemed by them unfit to exercise the prerogatives of an attorney at law. The power of the court in this respect is

limited only to the class which the legislature has determined is necessary to conserve the public welfare."

In upholding the inherent power of the court to determine who may be admitted to practice, subject to such reasonable and minimum restrictions as the legislature may prescribe, we do no violence to article VII of the Constitution wherein is embodied the grant of the pardoning power to the Governor. This article was taken substantially from section 13 of article V of the Constitution of 1849, which was in force when this court declared in *Cohen* v. *Wright*, 22 Cal. 293, that "the pardoning power does not extend to the reinstatement of an attorney excluded from the practice by law or the order of a court". Under familiar principles, it will be presumed that the provision in the present Constitution having to do with the pardoning power was adopted with this construction in mind. To give to the "pardon statute" the effect for which petitioner contends would be to enlarge and extend the pardoning power beyond the constitutional grant thereof. This distinguishes the present case from that of *In re Herron*, 217 Cal. 400 [19 Pac. (2d) 4]. Moreover, the opinion in the Herron case did not consider the point above discussed having to do with an infringement of the judicial power.

In view of our conclusion we find it unnecessary to specifically refer to the many cases cited by petitioner. However, we desire to discuss briefly the case of *Ex parte Garland*, 4 Wall. (71 U. S.) 333 [18 L. Ed. 366], which is so strongly relied on by petitioner. It appears therein that shortly after the Civil War congress enacted a statute prohibiting any person from appearing before any of the federal courts who had not taken an oath to the effect that he had not aided in the late rebellion or held office in the Confederate States. The petitioner Garland, who had been admitted to practice before the United States Supreme Court prior to the rebellion, had served in the congress of the Confederate States during the rebellion and therefore was not in a position to subsequently take the required oath. Upon receiving a full pardon from the President for all offenses committed by his participation in the rebellion, he moved the court for "permission to continue to practice as an attorney and counselor of the court" without taking said oath. It is thus immediately apparent that the case

did not involve any question as to "admission" or "reinstatement" to the practice of the law. Garland had never been suspended or disbarred from such practice. In the course of its opinion the court declared that the admission or exclusion of attorneys is not the exercise of a ministerial power but the exercise of a judicial power. It is then concluded, in effect, that the matter called for in the oath required by the act of congress had no substantial bearing on the individual's qualification to practice law and that the requirement of the oath was in the nature of a bill of attainder or *ex post facto* law imposing additional pains and penalties for past offenses, which pains and penalties were relieved by the pardon granted to the petitioner. In substance, that case merely held that the statute involved did violence to certain constitutional provisions. The additional discussion as to the effect of a pardon was unnecessary to the decision. However, if in that case the pardon had served to obliterate the offense for all purposes, as petitioner here, in effect, contends, Garland would have been in a position to take the oath and would not have had to seek exemption therefrom. However, as stated above, a pardon does not have such effect.

That the situation presented in the Garland case was unique was recognized in *Hawker* v. *New York,* 170 U. S. 189 [18 Sup. Ct. 573, 42 L. Ed. 1002], wherein it is stated that the Garland case merely determined that "one who has been admitted to practice the profession of the law, cannot be deprived of the right to continue in the exercise [thereof] by the exaction . . . of an oath as to . . . past conduct, respecting matters which have no connection with such profession". The peculiar situation presented in the Garland case is also recognized in *State* v. *Hazzard, supra,* 489, wherein it is stated that the Garland "decision has been robbed of much of its virility by later decisions of the court".

What has been said sufficiently disposes of petitioner's contention that the legislature, having provided for disbarment by court order upon receipt of a certified copy of the record of conviction, may also provide for the reinstatement of the offender based solely upon an executive pardon. The effect of this reasoning, as already indicated, would be to vacate a judicial order by legislative enactment. Moreover,

in our opinion, the provision for disbarment upon receipt of the record of conviction constitutes but legislative recognition of the court's inherent power to disbar an attorney convicted of a felony or misdemeanor including moral turpitude. In other words, the power to disbar upon conviction of such an offense reposes in the court and may be exercised in the absence of legislative expression or sanction. This being so, the court cannot be compelled to reinstate the offender upon a legislative declaration that a pardon entitles him to such reinstatement, but may, in the exercise of a sound discretion, require some showing of his moral rehabilitation.

The application for reinstatement is denied without prejudice to petitioner's right to renew his application for reinstatement upon such showing of moral rehabilitation as he may deem essential. Such application, if filed, should be addressed to the board of governors of The State Bar and filed at The State Bar office.

Thompson, J., Curtis, J., Langdon, J., Seawell, J., and Preston, J., concurred.