JESS F. SLATER, Appellee, v. PAUL O. OLSON et al., Appellants.

No. 45652.

SEPTEMBER 16, 1941.

Chauncey A. Weaver, for appellee.

F. T. Van Liew, Bruce J. Flick, Sam Orebaugh, and Sol Glick, for appellants.

STIGER, J.—Section 5701, Code 1939, designates the qualifications required of employees under civil service. The section reads in part as follows:

"5701 Employees under civil service—qualifications. * * * In no case shall any person be appointed or employed in any capacity in the fire or police department, or any department which is governed by civil service, unless such person:

" * * *

"2. Is of good moral character.
"  *  *  *

"5. Has not been convicted of a felony."

On January 5, 1934, plaintiff was convicted of larceny of a motor vehicle in Polk County, Iowa. On January 25, 1935, he was granted a full pardon by the governor which restored him to all his rights of citizenship.

On September 19, 1940, plaintiff filed his application with the Civil Service Commission of Des Moines for the position of Assistant Smoke Inspector.

Prior to the date set for the civil service examination, plaintiff was notified by the commission that his application was rejected because of his failure to meet the requirements of section 5701, subsection 5, that is, because he had been convicted of a felony.

Plaintiff, in the certiorari proceeding, stated that he had been granted a full pardon and restoration to all the rights, privileges and immunities of citizenship which were forfeited by reason of his conviction; that the Des Moines Civil Service Commission exceeded its jurisdiction in denying plaintiff the right to take the examination and that paragraph 5 of section 5701 is unconstitutional as being a limitation upon and a restriction of the pardoning power exclusively vested in the governor of the state by both constitutional and statutory provisions.

The trial court sustained the writ of certiorari on the following grounds:

"(a)  The Civil Service Commission, in denying plaintiff the right to take the civil service examination, exceeded its jurisdiction, authority and power.

"(b)  That Paragraph 5, section 5701, Chapter 289, Code of Iowa (1939) is an unlawful invasion of the pardoning power conferred on the Governor of Iowa by Article IV, Section 16 of the Constitution of this state, and can not be sustained."

Section 16, Article IV of the Constitution of the State of Iowa vests in the governor the exclusive power to grant pardons after conviction.

We are not concerned on this appeal whether the legisla-

ture acted wisely in enacting subsection 5 of section 5701, which, in effect, provides that a prior conviction conclusively establishes the bad moral character of the applicant or whether it violates the constitutional prohibition against the passage of ✱ a bill of attainder or ex post facto law, or with its application ' to a person who has been convicted of a felony but has not received a pardon.

. ▮▮▮ The sole issue presented by this appeal is whether paragraph 5 of section 5701 constitutes an encroachment by the legislature upon the exclusive constitutional power .to pardon lodged in the chief magistrate and the decision of the issue rests primarily upon the legal effect of a pardon on the status of a person convicted of a felony.

In State v. Forkner, 94 Iowa 1, 18, 62 N. W. 772, 777, 28 L. R. A. 206, 212, the opinion states:

"No doubt, a pardon, in its strict sense, contemplates a remission of guilt, both before and after a conviction. Ex parte Wells, 18 How. 309; Ex parte Garland, 4 Wall. 333; 4 Blackstone, Comm. 316."

In Ex parte Garland, 4 Wall. (71 U. S.) 333, 380, 18 L. Ed. 366, 371, the opinion states:

"If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."

It is now accepted doctrine that a full pardon absolves a party from all legal consequences of his crime. Osborn v. United States, 91 U. S. 474, 23 L. Ed. 388.

"Amnesty or pardon obliterates the offense, it is true, at least to such extent that for all legal purposes the one-time offender is to be relieved in the future from ·all its results; but it does not obliterate the acts themselves. It puts the offender in the same position as though what he had done never had been unlawful;" etc. United States v. Swift, 186 F. 1002, 1016.

The case of People v. Biggs, 9 Cal. 2d 508, 71 P. 2d 214,

holds a legislature has the power to impose a heavier penalty on account of a prior conviction although the offender has received a pardon. However, the court, in the course of its opinion, states that it is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and, generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed the conviction. We do not approve the statement in the case of Ex parte Garland, 71 U. S. 333, supra, that the effect of a full pardon is to make the offender "a new man" that "in the eye of the law the offender is as innocent as if he had never committed the offense" because of the broad implications that may be attributed to them. The statements have been approved by some courts, but are strongly disapproved by many authorities. See People v. Biggs, supra; Beck v. Finegan, 3 N. Y. S. 2d 1009; U. S. ex rel. Palermo v. Smith, 17 F. 2d 534, and generally on the effect of a pardon, 46 C. J. 1192, section 32, and cases cited.

We do hold however, that a full pardon granted after conviction contemplates, as stated in State v. Forkner, 94 Iowa 1, 62 N. W. 772, supra, a remission of guilt "both before and after conviction", forgives the offender and relieves him from the results of the offense, relieves not only from the punishment which the law inflicts for the crime but also exempts him from additional penalties and legal consequences in the form of disqualifications or disabilities based on his conviction. Undoubtedly the legislature may prescribe qualifications for office but the power must be exercised subject to the right of the pardoned man to be exempt from additional disabilities or disqualifications imposed because of the conviction. When, through the power of the pardon, the doors of the penitentiary opened to plaintiff, he took his place in society with all his civil rights restored entitled to start life anew unburdened of the onus of his conviction.

The Constitution vests the pardoning power exclusively in the governor, and, because of the division of the powers of government by section 1, Article III of the Constitution, neither the judiciary nor the legislature may interfere with or encroach upon this constitutional power lodged in the chief executive of

the state. Section 5701, subsection 2, provides that one of the qualifications of civil service employment is a good moral character. Subsection 5 of said section disqualifies a person from employment under civil service solely because he has been convicted of a felony. The result is that it establishes a conclusive presumption that a person who has been convicted of a felony is not of good moral character and imposes legal consequences and disabilities because of the conviction from which plaintiff was exempted by the pardon, which, as stated, not only removed the statutory penalties prescribed for the crime of larceny, but also prevented other disabilities and penalties from attaching because of the fact of conviction.

To interpret subsection 5, section 5701, as applicable to one who has received a full pardon would render it unconstitutional as a clear encroachment by the legislature upon the pardoning power of the chief magistrate.

While the pardon did not, of itself, conclusively restore the character of the plaintiff, and although the acts done by him were not obliterated by the pardon they were purged of their criminality and plaintiff was entitled to an opportunity of proving to the commission that, although he committed the acts resulting in his conviction, he is now a man of good moral character. In this connection, we deem it appropriate to quote the language of Tennyson, presented to us by counsel for plaintiff:

"I hold it true * * * that men may rise on stepping-stones of their dead selves, to higher things."

We will refer to some of the cases cited by appellants: State v. Hazzard, 139 Wash. 487, 247 P. 957, 47 A. L. R. 538, adheres to the general rule and holds a pardon does not restore a specific privilege or office forfeited by conviction. In Hawker v. State of New York, 170 U. S: 189, 18 S. Ct. 573, 42 L. Ed. 1002, the question of the effect of a pardon is not involved. The case holds a legislature can make the record of conviction conclusive evidence of the absence of good character.

In Beck v. Finegan, 3 N. Y. S. 2d 1009, a civil service commission rule provides (a) where the commission has information that a candidate whose name appears on the eligible list has a

questionable character or reputation he will be marked "not qualified" and his name withheld from certification and (b) the name of such person shall, after due notice to him and an opportunity to be heard, if he so desires, be stricken from the list if the commission so orders. The applicant had the burden of proving good character. The petitioner was number one on the eligible list. The hearing disclosed he had been convicted of a crime and the commission in the exercise of its discretion placed his name on the list of persons disqualified for employment in city civil service. The court, in reviewing the criminal record of the petitioner, held there was ample justification for the conclusion reached by the commission that he had a questionable character and reputation.

In In re Lavine, 2 Cal. 2d 324, 327, 329, 41 P. 2d 161, 162, 163, 42 P. 2d 311, petitioner, who had been disbarred from the practice of law pursuant to the provision of the statute upon his conviction of attempted extortion, applied, after receiving a full pardon, for reinstatement as an attorney at law. The court said that "Reduced to its simplest terms, the * * * proceeding requires us to determine whether a pardon standing alone and unsupported by evidence of moral rehabilitation, requires this court * * * to reinstate * * * [the applicant who had] forfeited his right to practice by reason * * * of an offense involving moral turpitude." The opinion states:

"The mere presentation of a pardon, without more, by an applicant, situated as is petitioner here, does not, in our opinion, satisfy the burden resting on him of showing that he possesses that moral stamina essential to one qualified to engage in the practice of the law, for it has been held that while a pardon obliterates an offense to such an extent that for all legal purposes the one-time offender is to be relieved in the future from all its results, it does not obliterate the act itself. It puts the offender in the same position as though what he had done never had been unlawful, but it does not close the judicial eye to the fact that once he had done an act which constituted the offense. (United States v. Swift, 186 Fed. 1002; People v. Weeber, 26 Colo. 229 [57 P. 1079, 1080].)"

The court further said in the Lavine case: " * * * in so far as

the * * * 'pardon statute' purports to reinstate, or to direct this, or any other, court to reinstate, without any showing of moral rehabilitation, an attorney who has received an executive pardon of the offense upon the conviction of which the disbarment was based'' it was void as a legislative encroachment upon the inherent power of the court and tantamount to vacating a' judgment order by legislative mandate.

The cited cases either do not control or are reconcilable with the conclusion we have reached in this case.—Affirmed.

MILLER, C. J., and SAGER, OLIVER, MITCHELL, and GARFIELD, JJ., concur.

WENNERSTRUM, BLISS, and HALE, JJ., dissent.

WENNERSTRUM, J. (dissenting)—I find myself unable to join in the majority opinion and consequently respectfully dissent.

It is my thought that the statutory restriction prohibiting a person who has been convicted of a felony from being appointed to any department which is governed by civil service is not a restriction upon the pardoning power of the governor. The majority opinion holds that the provision of paragraph 5 of section 5701 is an encroachment by the legislature upon the exclusive constitutional power to pardon, lodged in the governor, and in effect, if not in so many words, holds this provision unconstitutional.

The majority opinion states that ''the decision of the issue rests primarily upon the legal effect of a pardon on the status of a person convicted of a felony.'' The statute, in no way, restricts the governor in exercising his pardoning power. The pardon, when granted, unquestionably restores the convicted person to the rights of his previous citizenship—that of suffrage but it appears that is all that it can do. See Code section 3823, 1939 Code of Iowa.

It should be kept in mind that once a person has received civil service status he, in effect, has received a lifetime appointment. It undoubtedly was the purpose and thought of the legislature to make the qualifications for appointment such that

the appointees would be of unquestionably high caliber and character. The fact remains that regardless of the pardon the plaintiff has been convicted of a felony.

In commenting upon the case of Ex parte Garland, 4 Wall. (71 U. S.) 333, 380, 18 L. Ed. 366, mentioned in the majority opinion, Deady, J., in In re Spenser (C. C. Or. 1878), 22 Fed. Cas. No. 13234, 5 Sawy. (U. S., 9th Cir.) 195, 199, 1 N. J. Law J. 248, 251, said:

"This is probably as strong and unqualified a statement of the scope and efficacy of a pardon as can be found in the books. And yet I do not suppose the opinion is to be understood as going the length of holding that while the party is to be deemed innocent of the crime by reason of the pardon from and after the taking effect thereof, that it is also to be deemed that he never did commit the crime or was convicted of it. The effect of the pardon is prospective and not retrospective. It removes the guilt and restores the party to a state of innocence. But it does not change the past and cannot annihilate the established fact that he *was* guilty of the offense."

In the case of In re Rouss (1917), 221 N. Y. 81, 85, 116 N. E. 782, 783, where disbarment proceedings were under consideration of an attorney who had previously admitted his implication in a criminal act, although there was no criminal charge filed, Cardozo, J., then sitting on the New York Court of Appeals made the following statement:

"* * * On that high plane the jurisdiction was thus early placed, and in that high spirit it has been exercised. Even pardon will not elude it. Pardon blots out the offense and all its penalties, forfeitures and sentences; but the power to disbar remains. Matter of an Attorney, 86 N. Y. 563."

Further consideration has been given to the effect of a pardon where a defendant was charged with a second offense, in People v. Carlesi (1913), 154 App. Div. 481, 486, 139 N. Y. S. 309, 312, (affirmed in (1913) 208 N. Y. 547, 101 N. E. 1114, which was affirmed in (1914) 233 U. S. 51, 34 S. Ct. 576; 58 L. Ed. 843), where the court said:

1014

"The pardon of this defendant did not make 'a new man' of him; it did not 'blot out' the fact or the record of his conviction, and of course the Supreme Court, in deciding that the Congress could not impinge upon the pardoning power of the Executive, did not intend to hold that the Executive could blot out a solemn record of the judicial branch of government. See Roberts v. State [1898] 30 App. Div. 106, 51 N. Y. Supp. 691; [affirmed in (1899)] 160 N. Y. 217 [54 N. E. 678, 15 Am. Crim. Rep. 561]. The pardon in this case merely restored the defendant to his civil rights. If it had been granted before his term of imprisonment had been served, it would also have relieved the defendant of that. But it did not obliterate the record of his conviction or blot out the fact that he had been convicted. Matter of ................., an Attorney [1881], 86 N. Y. 563. It relieved the defendant of the consequences which the law attached to his offense. But the defendant is to be punished now solely in consequence of his second offense. The fact of the former conviction is an element merely in determining the criminality of the second offense. People v. Sickles [1898], 26 App. Div. 470, 50 N. Y. Supp. 377 [affirmed in 1898]; Id., 156 N. Y. 541, 51 N. E. 288; People ex rel. Cosgriff v. Craig [1909], supra [195 N. Y. 190, 88 N. E. 38]. The Legislature of this state has said that one who commits a crime after having been convicted of another crime is a greater offender than as though he had not previously been convicted, and the punishment inflicted is solely for the second offense to which a greater degree of criminality is thus attached. That degree of criminality is not at all lessened by the fact of a pardon which assumes his guilt, remits the punishment, and affords him an opportunity to become a law-abiding citizen. It was solely within the province of the Legislature to attach such greater criminality to the second offense from the mere fact of a conviction for a first, and the Executive by the exercise of the pardoning power could no more interfere with that exercise of legislative power than the Legislature could interfere with the power to pardon.''

There are numerous cases wherein the courts have held that a conviction of a felony is a proper ground to revoke the license of an attorney to practice law, or to revoke the license of a

physician to practice medicine. If it has been deemed advisable by certain courts to protect the public from an attorney or physician who has been convicted of a felony, even though such persons have been pardoned; and the courts have also held that consideration might be given to charges as to a second criminal offense, where there has been a pardon of the first offense, it would seem to me that this court should not now hold that the legislature could not place certain standards for those who are to be appointed to a civil service status. See cases cited in notes in 58 A. L. R. 49, 82 A. L. R. 362, 116 A. L. R. 225.

It is commendable to give encouragement to one who has paid the penalty for his past errors. But it is more important to have public officials of unquestionable standing, especially those, who are to receive civil service status. The legislature has endeavored by its statutory enactment to set a high standard and its efforts should not be restricted, in the manner, that I fear, the majority opinion does.

By reason of our complex governmental activities our citizenry are more and more the subject of governmental control through bureaus, departments and agencies. Some of these departments are under civil service. The personnel should be such that our citizens can feel that they are in good hands.

It is a strained conclusion to say that this statutory enactment is a restriction on the right of the governor to pardon. To so hold is just a further step in restricting the legislature from controlling the governmental affairs of the state. And the legislature, it should be called to mind, is the closest contact the people have to their government. I would reverse.

I am authorized to state that BLISS and HALE, JJ., concur in this dissenting opinion.