**In re William A. BORDERS, Jr., Petitioner.**

**No. 01–BG–1592.**

District of Columbia Court of Appeals.

Decided May 2, 2002.

Charles J. Ogletree, Jr., and Michael Rosier were on the Motion.

Joyce E. Peters, Bar Counsel, Wallace E. Shipp, Jr., Deputy Bar Counsel, and Judith Hetherton, Assistant Bar Counsel, were on the Opposition filed by the Office of Bar Counsel.

Durward M. Taylor filed a brief on behalf of the Honorable Kevin P. Chavous, Linda W. Cropp, and Sharon Pratt as amici curiae.

Sherri L. Wyatt filed a brief on behalf of Congressmen Elijah Cummings, James Clyburn, Earl Hilliard, Bennie Thompson, et al., as amici curiae.

Derrick A. Humphries filed a brief on behalf of Ophelia Long, Chair, Black Congress on Health, Law and Economics as amicus curiae.

Before STEADMAN and FARRELL, Associate Judges, and KING, Senior Judge.

FARRELL, Associate Judge:

Petitioner was disbarred from the practice of law in the District of Columbia following an unsuccessful appeal of his 1982 federal convictions for conspiracy, obstruction of justice, and unlawful travel in interstate commerce with intent to commit bribery. Under this court's decisions, these crimes each involved moral turpitude, see *In re Borders*, 665 A.2d 1381, 1382 (D.C.1995), requiring his disbarment under D.C.Code § 11–2503(a) (2001).[1] On

---

1. That section provides in full:

    When a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, and a certified copy of the conviction is presented to the court, the court shall, pending final determination of an appeal from the conviction, suspend the member of the bar from practice. Upon reversal of the conviction the court may vacate or modify the suspension. If a final judgment of conviction is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the

January 20, 2001, President William J. Clinton granted petitioner a full and unconditional pardon. Petitioner now, rather than seek reinstatement *via* a petition filed with the Board on Professional Responsibility, see D.C. Bar R. XI, § 16(d) (2001), asks the court to reinstate him automatically by virtue of the pardon, contending that "this Court must use its authority under D.C.Code § 11–2503 and modify or vacate Mr. Borders's disbarment by reinstating him to the D.C. Bar." We deny the petition without prejudice to the filing of a proper petition for reinstatement before the Board, in which petitioner may urge the pardon as a consideration favoring reinstatement. We express no view at this time concerning the proper weight to be given the pardon in determining whether petitioner has proven his fitness for reinstatement.

D.C.Code § 11–2503(a) provides that, "[i]f a final judgment of conviction [of an offense involving moral turpitude] is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and such person shall thereafter cease to be a member." We have recognized repeatedly that, "in accordance with the plain language of section 11–2503(a)," disbarment is mandatory once the "final judgment" condition is met. *In re Hopmayer*, 625 A.2d 290, 292 (D.C.1993); *see also, e.g., In re McBride*, 602 A.2d 626, 629 (D.C. 1992) (en banc).[2] By contrast, the same section states that, "[u]pon the granting of a pardon to a member so convicted, the court *may* vacate or modify the order of

disbarment" (emphasis added). The legislature's use of the permissive "may," on its face, would seem to defeat petitioner's argument that the court has no discretion but to reinstate an attorney disbarred under the statute but subsequently pardoned. In *McBride* this court described the legislative history of § 11–2503, including a comprehensive amendment of the statute in 1920 that gave the court "power," upon the granting of a pardon, "to vacate or modify [a prior] order of disbarment or suspension." 602 A.2d at 638. The court, in passing, pointed out that in proposing adoption of that amendment the House Committee on the Judiciary "explained that a pardon would not automatically reverse any disbarment; rather, the decision to reinstate after a pardon remained with the court." *Id.* at 639 n. 23 (citing *To Amend the Code of the District of Columbia: Hearings on H.R. 14974 Before the House Comm. on the Judiciary*, 64th Cong., 1st Sess. 63 (1916)).

Despite this authority plainly indicating that a pardon does not have the automatic effect petitioner would give it, he argues that in *In re Abrams*, 689 A.2d 6 (D.C. 1997) (en banc), the court implicitly recognized that when disbarment rests solely upon proof of conviction, as it does under § 11–2503(a), a subsequently granted pardon strips the disbarment of its continued legitimacy. *Abrams* does not stand for that conclusion; indeed, the *Abrams* court was not asked to decide the effect of a pardon upon a disbarment based on § 11–2503(a). *Abrams* had pled guilty to two

---

bar and such person shall thereafter cease to be a member. Upon the granting of a pardon to a member so convicted, the court may vacate or modify the order of disbarment.

2. In *McBride*, on the other hand, we recognized that the statutory language (specifically the word "thereafter") was ambiguous with

respect to the *length* of disbarment, 602 A.2d at 637–38, and applying by analogy the rule of lenity in criminal cases, we interpreted that ambiguity to mean that an attorney disbarred under the statute, "like all others who have been disbarred, [is] entitled to petition for reinstatement ... after five years of disbarment." *Id.* at 641.

counts of wilful failure to answer questions pertinent to a Congressional inquiry, a crime Bar Counsel did not contend involved moral turpitude. *See id.* at 11. After Abrams was pardoned by the President, the Board on Professional Responsibility recommended his suspension for one year on the ground that the underlying conduct involved dishonesty, deceit, or misrepresentation in violation of a disciplinary rule. *Id.* at 6. In accepting that finding of misconduct (but imposing the lesser sanction of public censure), the court rejected the argument that the "court's authority to impose professional discipline was ... nullified by the presidential pardon." *Id.* at 7.[3]

Petitioner is correct that, although rejecting Abrams' claim regarding the effect of a pardon, the court opined that "[t]he presidential pardon would undoubtedly have precluded a sanction based on Abrams' *conviction*, and Abrams did not, in any event, commit such a crime [*i.e.,* one involving moral turpitude]." *Id.* at 11 (emphasis added). But as the discipline imposed in *Abrams* did not stem from the application of § 11–2503(a), the court did not have to come to grips with the Congressional judgment expressed in that statute that " 'the decision to reinstate after a pardon remain[s] with the court,' " as a matter of discretion. *McBride,* 602 A.2d at 639 n. 23 (quoting Congressional report). Moreover, the quoted language from *Abrams* was stated in the context of a pardon that had been issued before attorney discipline was imposed, *see*

*Abrams,* 689 A.2d at 9, a situation different from the present case and one that § 11–2503(a) by its terms appears not to address. Consequently, the statements in *Abrams* on which petitioner relies provide no basis for disregarding the plain language of the statute.

Based upon that language, we reject petitioner's argument that the pardon requires his automatic reinstatement without regard to whether he has established fitness to resume practice in accordance with D.C. Bar Rule XI, § 16(d) and the factors set forth in *In re Roundtree,* 503 A.2d 1215 (D.C.1985). *See In re Lavine,* 2 Cal.2d 324, 41 P.2d 161, *modified,* 2 Cal.2d 324, 42 P.2d 311 (1935). Petitioner must file the appropriate application for reinstatement with the Board, and in that proceeding he "may urge the pardon as a consideration for reinstatement." *Grossgold v. Supreme Court of Illinois,* 557 F.2d 122, 126 (7th Cir.1977).

*Petition denied.*

STEADMAN, Associate Judge, concurring:

I continue to adhere to the view of the dissent in *In re Abrams* as to the continued force of Supreme Court precedent, which only that Court can overturn, on the effect of a presidential pardon. However, bound as I now am by the contrary view of the majority in *Abrams,* I concur in the exposition of the court's opinion as to the

---

**3.** The court reasoned in part:

"No moral character qualification for Bar membership is more important than truthfulness and candor." *In re Meyerson,* 190 Md. 671, 59 A.2d 489, 496 (1948). An attorney is required to be a person of good moral character not only at the time of admission to the Bar, but also thereafter. *In re Rouss,* 221 N.Y. 81, 116 N.E. 782, 783

(1917) (Cardozo, C.J.). The pardon could not "reinvest [Abrams] with those qualities which are absolutely essential for an attorney at law to possess or rehabilitate him in the trust and confidence of the court." *In re Lavine,* 2 Cal.2d 324, 41 P.2d 161, 163 (1935) (citation omitted).
689 A.2d at 7.

appropriate next step in this reinstatement proceeding.