**Joseph R. DAMIANO, Plaintiff-Respondent,**

**v.**

**John K. BURGE, Defendant-Appellant.**

**No. 25517.**

Missouri Court of Appeals,
Kansas City District.

April 24, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1972.

Application to Transfer Denied July 17, 1972.

Aaron A. Wilson, City Counselor, Rex G. Bostwick, Asst. City Counselor, Kansas City, for defendant-appellant.

Robert J. Mann, Kansas City, for plaintiff-respondent.

PER CURIAM.

The question here is plaintiff's eligibility for an employee's liquor license from the Kansas City, Missouri Department of Liquor Control. The facts and the legal issues have been fully stipulated by the parties.

In 1938, plaintiff was indicted by a federal grand jury on several counts. Plaintiff pleaded guilty on Count I, which alleged a conspiracy to violate federal tax laws involving the sale and manufacture of intoxicating liquors. Pursuant to plaintiff's plea, he was found guilty and was sentenced to a reformatory for one year and a day.

Thereafter, plaintiff was inducted into the United States Army in 1941 and served as a Heavy Machine Gunner until August 20, 1945. During his period of service, he served overseas and was awarded a Bronze Star. On August 20, 1945, he was honorably discharged in the rank of sergeant. He was one of the beneficiaries of a proclamation by President Harry S. Truman, dated December 24, 1945, under which all servicemen in plaintiff's category were granted "a full pardon" of all legal violations, including that of the type of which plaintiff was convicted in 1938.

After the termination of the war, plaintiff obtained a liquor employee's permit in the late 1940's and held such permit continuously, with brief interruptions, until August 7, 1969. On the latter date, the defendant, Director of Liquor Control for Kansas City, Missouri, refused to issue or renew that permit. The Liquor Control Review Board affirmed. On petition for judicial review, the Circuit Court reversed and ordered that plaintiff's application for a permit be granted.

The denial of the permit by defendant was premised upon § 4.35(3) of the Code of General Ordinances of Kansas City, Missouri which provides:

"No license provided for by this Chapter shall be issued to any individual except in conformity with the following:

"(3) That such person * * * is qualified to hold an alcoholic beverage license in the State of Missouri * * *."

The Missouri Statute which bears upon this problem is § 311.060, which provides as follows:

" * * * and no person shall be granted a license or permit hereunder

* * * who has been convicted, since the ratification of the twenty-first amendment of the Constitution of the United States, of a violation of the provisions of any law applicable to the manufacture or sale of intoxicating liquor, or who employs in his business as such dealer, any person * * * who has been convicted of violating such law since the date aforesaid * * *"

It has been stipulated by the parties that the refusal by defendant to issue the permit did not arise out of petitioner's misconduct during the years in which he held an employee's liquor permit. To the contrary, it specifically stipulated:

"That the sole and exclusive reason for the Director of Liquor Control's refusal to issue petitioner an employee's permit was the alleged conviction for conspiracy of the violation of certain Federal tax laws * * *"

The parties have stipulated that the issues presented are as follows:

(1) Is conspiracy to commit an offense and the commission of the substantive offense itself intended to be treated exactly the same under the State Liquor Statutes? In this respect, plaintiff contends that a conviction for conspiracy is not within the prohibition of § 311.060, while defendant contends to the contrary.

(2) Does the Presidential Pardon restore petitioner to his original position prior to the date of that conviction with regard to his application for a liquor permit or license? On this question, plaintiff contends the pardon reestablished eligibility for the permit, while defendant argues to the contrary.

The parties are in agreement that there is no Missouri authority directly in point with respect to either of those questions.

It is unnecessary for us to consider issue number one stated above, for the reason that we conclude that plaintiff is correct on issue number two, which fully and finally disposes of this whole case.

The effect of a pardon for various purposes has been very heavily debated, and the courts of this country have reached diverse results. We need not explore the ramifications of those arguments in all of the varied manners in which they have arisen. It is sufficient to confine ourselves to the relatively narrow problem involved here: in the case of an application for an office or license which is prohibited to one who has been convicted of a crime, does a pardon reestablish eligibility?

The intensive debate on this subject was initiated by the decision of the United States Supreme Court in Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366, which arose immediately following the Civil War. In that case, the petitioner was an attorney who had been enrolled to practice before the United States Supreme Court prior to the war. During the Civil War, his state seceded and he served in the Confederate Legislature. After the war, he obtained a presidential pardon for his participation in the war. However, Congress enacted a statute requiring all members of the Bar to take an oath that they had not participated in the rebellion. Petitioner, of course, was not in a position to honestly take that oath, and he filed suit to be permitted to practice notwithstanding. The United States Supreme Court held that the pardon completely wiped out the petitioner's offense, and therefore, eliminated the necessity of the oath. In that connection, the court held as follows, 1. c. 380, 18 L.Ed. 366:

"Such being the case, the inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before

conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

"There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment."

The broad language used by the Court in the Garland opinion proved to be the source of the extensive disagreement. As early as 1915, the argument between the courts had become so heated that Professor Williston published an article "Does a Pardon Blot Out Guilt?", 28 HLR 647, attempting to reconcile the diverse holdings. Professor Williston reviewed the many cases which had already been decided up to the date of his article on this subject. He, like many of the judges who had written on the subject, disapproved of the broad language of the Garland opinion. However, Professor Williston suggested that the seeming conflict of the decisions could be reconciled upon the following distinction, stated at page 653 of his article:

"The true line of distinction seems to be this: The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible."

The fundamental distinction suggested by Professor Williston has been generally accepted and followed by the courts since the date of his article. A leading case on the subject is State ex rel. Cloud v. State Election Board, 169 Okl. 363, 36 P.2d 20. In that case, one Kiker sought to run for the office of Representative. A constitutional provision made any person who had been adjudged guilty of a felony ineligible. Kiker had pleaded guilty to and had been convicted of embezzlement, but he had thereafter been pardoned by the Governor. The question presented was whether the pardon made him eligible for office. The Oklahoma Supreme Court held in the affirmative, going somewhat further in language than Professor Williston, but reaching the same result:

" 'A full, unconditional pardon reaches both the punishment prescribed for the offense and the guilt of the offender. It releases the punishment and blots out of existence the guilt so that in the eye of the law the offender is an innocent as if he never committed the offense. It obliterates, in legal contemplation, the offense itself.

" 'The doctrine of the authorities is that:

"In contemplation of law it so far blots out the offense that afterwards it cannot be imputed to him (the convict) to prevent the assertion of his legal rights. It gives him a new credit and capacity and rehabilitates him to that extent in his former position, and hence its effect is to make the offender a new man." 4 Bl.Com. 404. In re Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366; Knote v. United States, 95 U.S. 149, 24 L.Ed. 442; Young v. Young, 61 Tex. 191; State v. Page, 60 Kan. 664, 57 P. 514.'

\* \* \* \* \* \*

"It is also suggested that a rightful exercise of the pardoning power would result in encouragement to reform. A conviction of a felony in our courts not only creates a stain upon the character, but brands the felon as unworthy to occupy certain positions of trust and responsibility. While this is as it should

be, nevertheless a felon who has paid the price exacted by the law for his transgression should be given opportunity to prove by years of exemplary living that he has worked out a reformation of his own life and removed, in some degree at least, the stain against his character and to demonstrate that he is worthy of trust."

A more recent opinion to the same effect is Commissioner of Met. Dist. Com. v. Director of Civ. Serv., 348 Mass. 184, 203 N.E.2d 95, l. c. 103, in which the Massachusetts Supreme Court held as follows:

"General Laws c. 41, § 96A (inserted by St.1938, c. 342), provides that no person 'convicted of any felony shall be appointed as a police officer of a * * * district.' Whatever the legislative purpose behind § 96A may have been, it necessarily has the practical effect of imposing a quasi penal, civil disqualification to be a police officer as an incident of, and automatically following upon, conviction for felony. In the light of the cases from other jurisdictions, already cited, we think that the absolute disqualification or ineligibility, imposed by such a statute, is to be regarded as removed by a full pardon, so that the pardoned person (1) may apply for appointment to the office for which he was formerly disqualified, and (2) may hold that office if he is able to sustain the heavy burden of satisfying the electorate or an appointing authority of his good character and suitability at the time of seeking office. We think also that, in considering such a pardoned applicant's qualifications and suitability, the events underlying the pardoned conviction may be and should be evaluated, and relied upon reasonably, by the proper public body or authority."

Another opinion to the same effect is Slater v. Olson, 230 Iowa 1005, 299 N.W. 879, in which a majority of the Iowa Supreme Court held that it was unconstitutional for the Legislature to provide that a conviction conclusively showed bad character so as to make an applicant ineligible for civil service employment. In this respect, the majority of the court held at 299 N.W. 879, l. c. 881:

"Undoubtedly the legislature may prescribe qualifications for office but the power must be exercised subject to the right of the pardoned man to be exempt from additional disabilities or disqualifications imposed because of the conviction. When, through the power of the pardon, the doors of the penitentiary opened to plaintiff, he took his place in society with all his civil rights restored entitled to start life anew unburdened of the onus of his conviction.

   *     *     *     *     *     *

"Subsection 5 of said section disqualifies a person from employment under civil service solely because he has been convicted of a felony. The result is that it establishes a conclusive presumption that a person who has been convicted of a felony is not of good moral character and imposes legal consequences and disabilities because of the conviction from which plaintiff was exempted by the pardon, which, as stated, not only removed the statutory penalties prescribed for the crime of larceny, but also prevented other disabilities and penalties from attaching because of the fact of conviction.

"To interpret subsection 5, section 5701, as applicable to one who has received a full pardon would render it unconstitutional as a clear encroachment by the legislature upon the pardoning power of the chief magistrate.

"While the pardon did not, of itself, conclusively restore the character of the plaintiff, and although the acts done by him were not obliterated by the pardon they were purged of their criminality and plaintiff was entitled to an opportunity of proving to the commission that, although he committed the acts resulting in his conviction, he is now a man of good moral character. In this connection, we deem it appropriate to quote the

language of Tennyson, presented to us by counsel for plaintiff: 'I hold it true * * * that men may rise on stepping-stones of their dead selves, to higher things.' "

Similar decisions supporting the same rule are Hogan v. Hartwell, 242 Ala. 646, 7 So.2d 889; People ex rel. Symonds v. Gualano, 124 Ill.App.2d 208, 260 N.E.2d 284; State ex rel. Dean v. Haubrich, 248 Iowa 978, 83 N.W.2d 451.

We acknowledge that there exists judicial disagreement with the results expressed in the foregoing cases. See Ridgeway v. Catlett, 238 Ark. 323, 379 S.W.2d 277 (1964); State ex rel. Attorney General v. Irby, 190 Ark. 786, 81 S.W.2d 419 (1935); 94 A.L.R. 1011. However, we are of the opinion that the view expressed by Professor Williston, and by the cases which subscribe thereto, reaches the better result and should be followed in Missouri.

The defendant, and the Attorney General who has filed brief herein amicus curiae, cite and rely upon the decision of the Missouri Supreme Court in Hughes v. State Board of Health, 348 Mo. 1236, 159 S.W.2d 277. That reliance is misplaced. The Hughes case involved the revocation by the State Board of the plaintiff's license to practice medicine. One of the charges made against the plaintiff in that case was that he had been convicted by a Federal Court of use of the mails to defraud. He argued that the conviction had been wiped out by a presidential pardon. The Court rejected the argument on the ground that the pardon cannot be construed as restoring the plaintiff's good character. It will be observed that the Hughes decision falls squarely within the rationale urged by Professor Williston. The point of the Hughes decision is that the application was refused because the conviction was evidence of the applicant's bad moral character. In contrast, there is no contention in our case that plaintiff was of bad or even doubtful

moral character. On the contrary, the parties here have stipulated that "the sole and exclusive reason for the Director of Liquor Control's refusal to issue petitioner an employee's permit was the alleged conviction"; and defendant further admits in his brief that his refusal to renew plaintiff's permit "was not due to any misconduct on the part of respondent going to respondent's moral fitness." In other words, the defendant here has attempted to reject the application on the very ground which Professor Williston, and the many cases following his view, state cannot be the grounds for refusal.

The defendant also argues that the Presidential Pardon herein should be disregarded, by contrasting the provisions of § 311.-060, RSMo (with which we are concerned) with those of § 111.060, RSMo, dealing with the right of suffrage. Defendant points out that in the latter section, conviction of a felony forfeits the right to vote of any person "unless he shall have been granted a full pardon". Defendant argues that the failure to include a similar exception in § 311.060 requires the conclusion that the Legislature intended a different result.

We are not persuaded by that argument. If nothing else, the problems covered by these two statutes are not so closely connected that we are compelled to believe that the Legislature had the provisions of § 111.060 in mind when it dealt with the subject matter of § 311.060. There is no convincing reason to believe that the Legislature had any intention one way or another concerning denying effect to a presidential pardon under § 311.060, assuming that it has the power to do so. With respect to the latter question, we have no occasion now to even intimate an opinion.

We are persuaded for the reasons hereinbefore stated, that the Presidential Pardon did reinstate plaintiff's eligibility to an employee's liquor permit. The judgment of the trial court is affirmed.