Robert S. Moore, Jr., Director Arkansas Alcoholic Beverage Control Division 1515 West 7th Street, Suite 503 Little Rock, Arkansas 72201
Dear Mr. Moore:
I am writing in response to your request for an opinion on the effect of A.C.A. § 3-2-103 (Supp. 2005) on an individual's application for a permit issued by the Alcoholic Beverage Control Division (the "ABC"). Specifically, you have posed two questions that I will paraphrase as follows:
 1. Pursuant to provisions of A.C.A. 3-2-103 and the conclusions reached in Ark. Ops. Att'y Gen. Nos. 2003-057 and 2003-183, is the Alcoholic Beverage Control ("ABC") Division prohibited from granting permits to persons whose criminal records have been sealed or expunged?
 2. Is a convicted felon who received a full and unconditional pardon from the President of the United States still disqualified from applying for a permit from ABC under the provisions of A.C.A. 3-2-103?
You recite the following factual background:
 Acts of Arkansas 1248 of 2005, now codified at Arkansas Code 3-2-103, provides that any person applying for a permit issued by the ABC Division, with two minor exceptions that are not pertinent to this request, shall meet certain requirements. A principal requirement is that no applicant shall have been found guilty of or of [sic: "have"] pleaded guilty or nolo contendere to any felony in any court of the state of Arkansas or any similar offense by a court in another state or any similar offense by a military or federal court.
 Prior to the passage of Acts of Arkansas 1248 of 2005 the ABC Division had accepted applications from persons who had "expunged" records, such as might be obtained under the provisions of Arkansas Code 5-4-311, a part of Act 280 of 1975.
 The Arkansas Criminal Code is the codification of Act 280 of 1975. According to our understanding of the same, two provisions, which if applied, would cause a person to become a convicted felon. A person could become a convicted felon if they were sentenced to pay a fine, such as set by Arkansas Code 5-4-201. A person could be convicted of a felony by a sentence of imprisonment as is set by Arkansas Code 5-4-401. A person could be sentenced to both imprisonment and the payment of fine and become a felon. Under certain circumstances the imprisonment or the payment of fine could be suspended or imposition of the sentence could be withheld.
 Under this law, it would appear that, if a person had not been sentenced to a term of confinement in the Department of Correction and if they had not been sentenced to pay a fine, then, upon expungement of the record, it would be as if the crime and subsequent court process had never occurred.
 Our office has now received information from the Arkansas State Police which indicates that persons who have expungements or sealed records are not qualified to receive a permit from the ABC Division. This position is founded on reasons expressed by you in Arkansas Attorney General Opinions 2003-057 and 2003-183.
RESPONSE
In my opinion, the answer to your first question is "yes." With respect to your second question, although a presidentially pardoned felon might not be barred from filing an application for a liquor permit, I believe A.C.A. § 3-2-103 would in all likelihood preclude the Alcoholic Beverage Control from issuing the permit.
Question 1: Pursuant to provisions of A.C.A. 3-2-103 and theconclusions reached in Ark. Ops. Att'y Gen. Nos. 2003-057 and2003-183, is the Alcoholic Beverage Control ("ABC") Divisionprohibited from granting permits to persons whose criminalrecords have been sealed or expunged?
In my opinion, the answer to this question is "yes."
Subsection 3-2-103 of the Arkansas Code (Supp. 2005), enacted pursuant to Acts 2005, No. 1248, § 1, provides in pertinent part:
 (a) Any person applying for any permit issued by the Alcoholic Beverage Control Division, except as provided in subsection (b) or (c) of this section,[1] shall meet the following requirements:
 (1) No applicant shall have been found guilty of or pleaded guilty or nolo contendere to:
 (A) Any felony by any court in the State of Arkansas; or
 (B) Any similar offense by a court in another state or of any similar offense by a military or federal court[.]
In the two opinions referenced in your question, I addressed the effect of an expungement upon a candidate's eligibility for employment in nursing homes, Ark. Op. Att'y Gen. No.2003-183,[2] and school districts, Ark. Op. Att'y Gen. No.2003-057, when the candidate had pled guilty or nolo contendere to a felony and the pertinent statutes, without mentioning the effect of an expungement, merely recited such pleas as disqualifying a candidate from employment. In Opinion No.2003-183, I offered the following remarks regarding a statute of this sort:
 In [Opinion No. 2003-057], I noted that various statutes prohibit or restrict certain activities by individuals who have pleaded guilty or nolo contendere to or been "found guilty" of certain specified offenses. . . . [V]arious of these statutes expressly state that an expunged plea or conviction will be the equivalent of a conviction disqualifying the defendant from the employment or activity at issue, whereas other statutes are simply silent regarding the effects of an expungement. Regrettably, the legislature's failure to address the effects of expungement in the latter category of statutes has apparently caused significant confusion of the sort reflected in your current request and in the request addressed in Opinion 2003-057.
Section 3-2-103, being silent on the question of what effect an expungement might have, falls within the latter category of statutes, prompting yet another request regarding the effects of an expungement.
Under the circumstances, I can do no more than echo the following analysis from Opinion No. 2003-183:
 I believe the better practice would be for the legislature to specify in each instance whether an expungement authorizes a prospective or current employer to ignore a plea or conviction in determining eligibility for employment. However, to date, the legislature has not done so. Accordingly, relying largely on the reasoning set forth in . . . Ark. Op. Att'y Gen. No. 2002-141 and various earlier opinions, I opined in Opinion 2003-057 that unless otherwise specified, the restrictions on activities, including employment of various sorts, would continue in effect even if a court of competent jurisdiction were to expunge the records relating to an offense.
In both Opinions Nos. 2003-183 and 2003-057, I agreed with the following analysis offered by one of my predecessors in Opinion No. 2002-141:
 I have previously concurred with the position of my predecessors that if a statute prohibits certain activities by a person who has "pled guilty or nolo contendere" or has been "found guilty" of certain offenses, that statutory reference to pleading guilty or nolo contendere has the effect of overriding an expungement. See Op. Att'y Gen. No. 99-237, fn 2. In other words, such statutory language is what is referred to in A.C.A. § 16-90-902 [the expungement statute] by the phrase "unless otherwise specifically provided for by law." My predecessors took the position that such statutory language in effect means that the expungement laws will not apply. Instead, the more specific provisions of the prohibition will control. See, e.g., Ops. Att'y Gen. Nos. 98-007; 96-387; 94-148; 89-093; 89-056. The reasoning that has supported this position is that the legislature, in making specific reference to persons who have pled guilty or nolo contendere (and not merely to persons who were "found guilty" or who had "convictions" on their records), was intentionally including defendants who have not been adjudged guilty and whose records have been expunged. As noted previously, defendants whose records have not been expunged actually have "convictions" (adjudications of guilt) entered on the record, even if they pled guilty or nolo contendere and are deemed to have been "found guilty." If the legislature had intended to exclude those without adjudications of guilt and whose records have been expunged, it would have simply used the words "convicted" or "found guilty" in the applicable statute. (For an explanation of this issue, see Op. Att'y Gen. No. 96-387.) Therefore, it was necessary for the legislature to refer to persons who pled guilty or nolo contendere in order to include persons who were not adjudged guilty and who therefore did not have "convictions" on the record — i.e., persons whose records have been expunged. This interpretation of the reference to pleading guilty or nolo contendere has the effect of assuring that defendants who were not adjudged guilty and whose records were expunged will be included in the particular prohibition. The most prominent example of this office's use of this reasoning can be found in the opinions that have concluded that defendants whose records were expunged are not eligible to become law enforcement officers because of the prohibition stated in A.C.A. § 12-9-106 (which prohibits persons who plead, or who are found guilty of a felony from being law enforcement officers). See Ops. Att'y Gen. Nos. 94-308; 94-148; 89-093; 89-056; 83-217.
As I noted in Ark. Op. Att'y Gen. No. 2003-183, I continue to believe that "the reasoning and conclusions reached in Opinions2002-141 and 2003-057 (and the earlier opinions upon which they rely) remain valid." I indicated that I was not inclined to break from the series of prior opinions issued by this office suggesting that an expunged plea of guilty or nolo contendere will continue to be a disqualifying condition unless the legislature has indicated otherwise. I am likewise not inclined to break from these precedents now. Nevertheless, I feel obliged to repeat that "the legislature would do well to clarify whether or not a statute setting forth disqualifications from employment [or any other activity] must state expressly that an expunged record will serve as a basis for disqualification." Opinion No.2003-183.
Question 2: Is a convicted felon who received a full andunconditional pardon from the President of the United Statesstill disqualified from applying for a permit from ABC under theprovisions of A.C.A. 3-2-103?
You report that this question relates to the application for a liquor permit of an individual who was convicted of a federal offense and who served a period of two months in federal prison before being unconditionally pardoned by the president pursuant to U.S. Const. art. 2, § 2, which provides that that the president "shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." As noted in my response to your first question, A.C.A. § 3-2-103(a)(1) excludes from such licensure any individual who "shall have been found guilty of or pleaded guilty or nolo contendere to" any felony in federal court. At issue is whether this statute would apply to disqualify from licensure the individual referenced in your request notwithstanding the fact that he was granted a presidential pardon. In my opinion, although nothing would preclude this individual from submitting an application for licensure, under current Arkansas law, the ABC would in all likelihood be required to reject the application. However, having ventured this opinion, I must note that, to the extent that the statute requires automatic disqualification based purely upon the fact of the pardoned conviction, it might be subject to constitutional attack as impermissibly abridging the president's pardon power.
The overarching issue in addressing your question is the extent to which A.C.A. § 3-2-103 might impinge upon the president's constitutional authority to grant a "full" pardon pursuant to U.S. Const. art 2, § 2. This basic question might be restated as follows: Is the state precluded by preemptive federal law from enacting a disqualifying statute that limits what would otherwise be the completely exonerative effect of a presidential pardon? If a presidential pardon essentially obliterates a conviction not only with respect to its statutory punishments, but further with respect to any other legal consequences, then a state statute disqualifying a felon from licensure notwithstanding the fact that the president had pardoned the felon might be interpreted as violating the supremacy clause of the federal constitution, U.S. Const. art. 6, cl. 2.[3]
From the earliest days of Supreme Court jurisprudence on this issue, the basic question has been whether state action that might be seen as compromising the scope and effects of a presidential pardon impermissibly enhances the "punishment" for the underlying offense. In an opinion issued shortly after the Civil War, the Supreme Court suggested that a presidential pardon essentially erases a conviction for all conceivable purposes and hence warrants treating the offender as though his illegal conduct had never occurred. Ex parte Garland, 71 U.S. (4 Wall.) 333, 380-81 (1866). In Garland, the Supreme Court held that it offended the pardon clause of the U.S. Constitution to deprive an attorney of his law license based on a pardoned conviction for treason stemming from service in the Confederate legislature.Id. Specifically, the Court noted that "[a] pardon reaches both the punishment prescribed for the offence and the guilt of the offender[,]" and that "it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." Id.
In Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 321-22 (1866), in which the Court considered whether the Missouri Constitution might condition eligibility to work in various professions upon taking an oath addressing one's former activities in support of or sentiments toward the Confederacy, the Court offered the following categorical summation of the law:
 The theory upon which our political institutions rest is, that all men have certain inalienable rights — that among these are life, liberty, and the pursuit of happiness; and that in the pursuit of happiness all avocations, all honors, all positions, are alike open to everyone, and that in the protection of these rights all are equal before the law. Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined.
(Emphasis added.)
In Carlesi v. New York, 233 U.S. 51, 57 (1914), which addressed whether the fact of a pardoned federal conviction could be taken into account for purposes of sentence enhancement as an habitual offender, the Court offered the following pronouncement:
 It may not be questioned that the States are without right directly or indirectly to restrict the national government in the exertion of its legitimate powers. It is therefore to be conceded that if the act of the state in taking into consideration a prior conviction of an offense committed by the same offender against the laws of the United States despite a pardon was in any just sense a punishment for such prior crime, that the act of the state would be void because destroying or circumscribing the effect of the pardon granted under the Constitution and laws of the United States.
Significantly, this formulation appears somewhat less categorical than those set forth in Garland and Cummings,
appearing to accommodate the possibility that a state might take a pardoned conviction into account without impermissibly imposing new "punishment" for a presidentially pardoned offense. Indeed, the Court acted on that possibility by declaring that the conviction might be considered for purposes of sentence enhancement, in effect classifying the enhancement as punishment for the new offense, as distinct from the pardoned offense. Id.
at 59. Accord United States v. McMichael, 358 F.Supp. 2d 644,648 (E.D. Mich. 2005) (invoking Carlesi, holding that a presidentially pardoned conviction could be used to enhance a penalty for a subsequent offense because "[t]his punishment would constitute punishment for the subsequent offense, taking into account all of the appropriate circumstances. . . .").
Finally, in Burdick v. United States, 236 U.S. 79, 94 (1915), the Supreme Court retreated altogether from its categorical dictum in Garland regarding the effect of a pardon, noting that granting a pardon "carries the imputation of guilt; acceptance a confession of it." This retreat is in all respects consistent with more recent case law, which generally characterizes the broad pronouncements in Garland as dictum. See, e.g., Fletcherv. Graham, No. 2005-CA-002357-OA, 2005 WL 3444631 *4 (Ky.App. Dec. 16, 2005); Hirschberg v. Commodity Futures TradingCommission, 414 F.3d 679, 682-83 (7th Cir. 2005); R.J.L. v.State, 887 So.2d 1268, 1272-78 (Fla. 2004); Randall v. FloridaDepartment of Law Enforcement, 791 So.2d 1238, 1242-44
(Fla.App. 2001); Mudd v. Caldera, 26 F.Supp.2d 113, 119; In reAbrams, 689 A,2d 6, 10, 11-18 (D.C. 1997); In re North,62 F.3d 1434, 1436-37 (D.C. Cir. 1994); United States v. Noonan,906 F.2d 952, 958 (3d Cir. 1990); but see Casey v. State,852 So.2d 175, 179 (Ala. 2002) (expressly adopting the Garland
standard in the course of reversing the Court of Criminal Appeals' determination that a pardoned conviction could be considered for purposes of sentence enhancement).
In 1915, shortly after the Supreme Court's decision in Carlesi,
Professor Williston distilled from the case law up to that date the following statement of what has since come to be recognized as the post-Garland consensus[4] — a consensus that, as discussed further infra, may be based upon constitutional imperatives:
 The true line of distinction seems to be this: The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.
 Thus, the fact of conviction after a pardon cannot be taken into account in subsequent proceedings. However, the fact of the commission of the crime may be considered. Therefore, although the effects of the commission of the offense linger after a pardon, the effects of the conviction are all but wiped out.
Williston, Does a Pardon Blot Out Guilt?, 28 Harv. L. Rev. 647, 653 (1915) (emphasis added).
In the years since the issuance of Garland, cases addressing the effects of pardoned convictions upon both the right to hold office and entitlement to various types of licensure have fallen into three basic categories. The outline of these categories, as well as the relationship between the effects of a pardon on the right to hold office, on the one hand, and the right to obtain various types of licenses, on the other, is discussed as follows in an annotation on the subject:
 Crucial to the determination whether a pardon will restore eligibility to hold a particular office is the view that the court takes as to the general effect of a pardon. Thus, some courts have taken the view that the pardon eliminates both the punishment resulting from the conviction and any moral guilt or blame which may have accompanied the commission of the crime. Under this view, it would appear that a pardon would restore eligibility for public office. On the other hand, it has been said that while the pardon removes the punishment resulting from the conviction, it does not remove the moral guilt resulting from the commission of the crime; under this view, if a disqualification to hold public office is based merely upon a conviction of a crime, the pardon restores the one pardoned to eligibility for the office, although he is not restored to eligibility where character is a qualification for the office. In considering the eligibility of a pardoned person for public office, other courts have concluded that the pardon eliminates neither the fact of conviction nor the moral guilt accompanying the conviction. Such a view would appear to lead to the conclusion that the pardon does not restore eligibility.
* * *
 In those cases involving the restoration of, or eligibility for, licenses other than to practice law, the courts have engaged in the same analytical process involved in those cases considering the effect of a pardon upon eligibility to hold public office. Thus, some courts have adopted the view that the pardon removes the legal punishment resulting from conviction, but not the moral guilt or blame arising from the acts involved in committing the crime. Other courts have adopted the view that the pardon obliterates neither the act of conviction nor the accompanying moral guilt.
Gary L. Hall, Annotation, Pardon as Restoring Public Office orLicense or Eligibility Therefor, 58 A.L.R.3d 1191 (2006), at § 2[a] (footnotes omitted; emphasis added). Accord Ashley M. Steiner, Comment, Remission of Guilt or Removal of Punishment?The Effects of a Presidential Pardon, 46 Emory L.J. 959 (1997) (acknowledging the same three categories of interpretation).
As illustrating the last recited option, supporting the conclusion that a pardon would do nothing to mitigate the effect of a statute listing a conviction or plea as a disqualifying condition, the annotator cites State v. Irby, 190 Ark. 786,77 S.W.2d 456, cert. denied 296 U.S. 616 (1935), in which the Arkansas Supreme Court concluded that a presidential pardon would not relieve a convicted embezzler from the proscription against office-holding set forth at Ark. Const. art. 5, § 9 (foreclosing those convicted of embezzlement, among other offenses, from holding public office). See also Guastello v. Department ofLiquor Control,[5] 536 S.W.2d 21, 23 n. 4 (Mo. 1976) (citing Irby and Ridgeway v. Catlett, 238 Ark. 323,379 S.W.2d 277 (1964), both of which held that a pardoned embezzler could not hold public office, as reflecting the third option, meaning that "a pardon would have no effect whatsoever on disqualification statutes like that in question."); Wier v.Peterson, 369 A.2d 1076, 1081 (Del. 1976) ("While a pardon removes all legal punishments and disabilities attached to a conviction, we hold that it cannot erase the fact that the offender was convicted of an infamous crime and it is the fact of conviction alone, not its continuing viability, which renders the offender ineligible to hold public office. Ridgeway v. Catlett,238 Ark. 323, 379 S.W.2d 277 (1964).").
In holding that a presidential pardon did not restore a convicted embezzler's eligibility to hold office, the court in Irby
offered the following:
 [T]he rule which seems to be supported by the great weight of American authority, and is grounded upon reason and logic, is stated in 46 C.J 1192, as follows:
 "When a full and absolute pardon is granted, it exempts the individual upon whom it is bestowed from the punishment which the law inflicts for the crime which he has committed. The crime is forgiven and remitted, and the individual is relieved from all of its legal consequences. The effect of a full pardon is to make the offender a new man. While a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense, it does not so operate for all purposes, and, as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of commission of the crime and the conviction thereof; it does not wash out the moral stain; as has been tersely said, it involves forgiveness and not forgetfulness." State v. Hazard, [247 P. 957 (Wash. 1926)].
190 Ark. at 797.
The court clearly stated its conclusion that denying the privilege of public officeholding was not part of the punishment meted out for the underlying offense of embezzlement. Id. at 794. Rather, it was a consequence of conviction that disqualified the officeholder by constitutional mandate.[6] Id. In what it characterized as "[t]he rule which we deem to be sound and based upon reason and logic," the court adopted the following standard from State ex rel. Olson v. Langer, 256 N.W. 377, 385
(N.D. 1934):
 The exclusion must . . . be adjudged a mere disqualification, imposed for protection and not for punishment, the withholding of a privilege and not the denial of a personal right. 9 R.C.L. 1942. See also 20 C.J. 60. As the Supreme Court of North Carolina, considering a constitutional provision similar to the one involved in the case at bar, said: "The disqualification for office and the loss of the right of suffrage imposed by art. 6 of the Constitution upon persons convicted of infamous offenses constitute no part of the judgment of the court, but are mere consequences of such judgment.[7] State v. Prince Jones, 82 N.C. 685."
The court concluded that an executive pardon — including a presidential pardon — does not "destroy the stigma of conviction and restore political privileges." 190 Ark. at 796. The court further made clear that this conclusion would apply irrespective of whether the pardon issued from the governor pursuant to Ark. Const. art. 6, § 18 or from the president pursuant to U.S. Const. art. 2, § 2.[8] 190 Ark. at 797-98.
Notwithstanding the suggestion above that the Williston standard, which marks a variation on the second option recited in the A.L.R. annotation referenced above, has been all but universally accepted, various courts have declined to undertake case-by-case analyses to determine a pardoned candidate's eligibility, instead declaring a candidate automatically disqualified from licensure notwithstanding the fact that he has received an executive pardon. See, e.g., Theodoro v. Department of Liquor Control,527 S.W.2d 350, 353 (Mo. 1975) (upholding automatic administrative revocation of liquor license to individual gubernatorially pardoned for selling liquor on Sundays, reasoning that licensure was a civil matter not affected by a criminal pardon and not constituting enhanced punishment); Stone v.Oklahoma Real Estate Commission, 369 P.2d 642, 645 (1962) (pardoned conviction for crime involving moral turpitude automatically disqualified applicant for real estate license under applicable legislation); Prichard v. Battle,17 S.E.2d 393, 394-95 (Va. 1941) (gubernatorial pardon of conviction for leaving the scene of an accident did not remove automatic revocation of driver's license pursuant to the state's police power, which was not part of the punishment for the pardoned offense); Baldi v. Gilchrist, 198 N.Y.S. 493, 495-96 (1923) (notwithstanding the fact of a gubernatorial pardon, refusing renewal of taxicab license for convicted felon pursuant to administrative rule in the exercise of the police power).
In each of the cases recited in the previous paragraph, the court felt obliged to explain in detail why the categorical bar was justified as an exercise of the state's police power. In effect, the court in each instance concluded that the public welfare warranted excluding from licensure any pardoned offender who fell within the scope of the proscription (although the statute at issue in Prichard did provide for the restoration of the license upon the posting of a significant bond to protect the public, 17 S.E.2d at 394-95), just as the proscription set forth in Ark. Const. art. 5, § 9, as interpreted by Irby, precludes even a pardoned felon from holding public office. Illustrating this principle, the court commented in Prichard:
 The Legislature, in its wisdom, has simply provided that one who has been convicted of these offenses is no longer deemed fit to operate motor vehicles on the State highways unless and until the other users of the highways are protected against him, that is, until the offender establishes `his ability to respond in damages which may thereafter be adjudged against him on account of accidents resulting from his ownership or operation of a motor vehicle.'
17 S.E.2d at 395. None of the foreign courts referenced above even addressed the issue of whether such a statute might violate the principle of separation of powers, apparently assuming that the legislature's reasonable exercise of the police power might properly abridge the scope of a governor's constitutionally granted pardon power.
The fact that Irby may reflect one extreme on the spectrum discussed in the A.L.R. annotation excerpted above — namely, the third alternative that would render any conviction, whether pardoned or not, a disqualification — matters only inasmuch as it raises the question of whether the Arkansas standard impermissibly encroaches on presidential prerogatives. Indeed, several cases that have embraced the middle road described in the A.L.R. annotation have suggested that automatically applying the fact of conviction as a disqualifier for licensure will offend the federal constitution when the conviction has been presidentially pardoned.
In Hirschberg v. Commodity Futures Trading Commission,414 F.3d 679, 682 (7th Cir. 2005), in the course of upholding the Commission's determination to deny a former registered floor broker a new registration notwithstanding the fact that he had received a full presidential pardon of his federal conviction for mail fraud, the court offered the following analysis:
 [M]odern case law emphasizes (and indeed Hirschberg admits) that [the Garland] historical language was dicta and is inconsistent with current law.[9] See In re North, 62 F.3d 1434-1437 (D.C. Cir. 1994). A pardon in no way reverses the legal conclusion of the courts; it "does not blot out guilt or expunge a judgment of conviction." North, 62 F.3d at 1437; see also Nixon v. United States, 506 U.S. 223, 232, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) ("a pardon is in no sense an overturning of a judgment of conviction by some other tribunal"); Burdick v. United States, 236 U.S. 79, 94, 35 S.Ct. 267, 59 L.Ed. 476 (1915) (a pardon" carries an imputation of guilt"). The effect of a pardon is not to prohibit all consequences of a pardoned conviction, but rather to preclude future punishment for the conviction. See Nixon, 506 U.S. at 232, 113 S.Ct. 732; Bjerkan v. United States, 529 F.2d 125, 127-28 (7th Cir. 1975).
414 F.3d at 682-83. In accordance with this statement of the law, the court reviewed the nature of Hirschberg's pardoned offense and concluded that denying him a broker's license was appropriate notwithstanding the pardon. Id. at 683.
However, although strongly maintaining that a presidential pardon should not be given the blanket exonerative effect suggested by the dictum in Garland, the court in Hirschberg conversely suggested that it would be impermissible under the pardon clause of the Constitution to disqualify a pardoned felon from licensure based exclusively upon the fact of his pardoned conviction. Specifically, the court remarked:
 In cases where governmental action has been held to violate the pardon clause, . . . the pardoned individual is stripped of his rights based not on the conduct underlying the conviction, but on the fact of conviction alone. See Bjerkan, 529 F.2d at 128
(holding that a state's deprivation of a pardoned individual's civil rights based on fact of a conviction alone violated pardon clause).
Id. The parenthetical in this passage is based upon the following declaration by the Bjerkan court:
 [A]ny deprivation of a person's basic civil rights, including the right to vote, the right to serve on juries and the right to work in certain professions, by a state on account of a federal conviction would constitute a punishment. If the conviction were pardoned, as it was here, such attempted punishment would constitute a restriction on the legitimate, constitutional power of the President to pardon an offense against the United States and would be void as circumscribing and nullifying that power.
529 F.2d at 128 (footnote omitted).[10] Notwithstanding the categorical tone of this pronouncement, which would seem to rule out any consideration of a pardoned conviction in determining "the right to work in certain professions," the court inBjerkan nevertheless accepted as appropriate the generally accepted Williston standard. Id. at 128 n. 2. However, implicit in the court's analysis was a conclusion that to disqualify an applicant for statute licensure based solely on the fact of a pardoned federal conviction would run afoul of the supremacy clause and the federal pardon clause.
A constitutionally based judicial reluctance to embrace the third alternative — namely, as in Irby, classifying the fact of a pardoned conviction as an automatic disqualification — is further illustrated in two Florida cases, the second of which reversed the first on constitutional grounds. In Sandlin v. CriminalJustice Standards and Training Commission, 518 So.2d 1292
(Fla.App. 1987), a Florida appellate court was faced with the question of whether a felon pardoned under state law who had served long and admirably as a bailiff since the time of his pardon might serve as a police officer. Noting that the Florida Supreme Court had not yet declared the effect of a full pardon upon a felon's eligibility to serve, id. at 1294, the court nevertheless felt obliged to affirm the reluctant conclusion of the Florida Criminal Justice Standards and Training Commission that the candidate was ineligible.[11] Id. at 1295. The court interpreted the pertinent legislation to mean that the Commission was barred from considering an applicant's possible moral reclamation as bearing on the question of whether the pardon restored the applicant's eligibility.[12] Id. at 1297. In effect, then, the court concluded that the Florida legislature had adopted the third standard described in the annotation recited above, as the Arkansas Supreme Court appears to have done in Irby, at least with respect to the issue of office-holding. The court consequently agreed that the applicant was ineligible.Id.
In recognition of what it termed the "harsh consequences" of its ruling, the court certified the question to the Florida Supreme Court, id., which, in Sandlin v. Criminal Justice Standardsand Training Commission, 531 So.2d 1344 (Fla. 1988), quashed the lower court's decision. The appellant argued that the statute rendering the fact of even a pardoned conviction a disqualification from service as a law enforcement officer amounted to an unconstitutional incursion upon the governor's pardon power. Id. at 1345. Noting that "the pardoning power is a function exclusive to the executive, deriving from the state constitution," id., and invoking an earlier version of the A.L.R. annotation quoted above,[13] the court held that the second option discussed in the annotation applies — namely, in the words of the court, "that a pardon removes punishment, but not moral guilt."[14] Id. at 1346. In accordance with this standard, the court remanded the case, directing the lower court to instruct the Commission to rigorously review the applicant's moral character in reconsidering its initial determination. Id. Apparently based in part upon its conclusions regarding the constitutional restrictions upon legislative power in the face of the executive's constitutional power to pardon, the court limited its restrictions on licensure as follows: "Persons seeking to practice certain professions or employments . . . can be required to demonstrate their good moral character, even though they may have been fully pardoned for previous crimes." Id.
The Florida Supreme Court's decision in Sandlin is consistent with the analysis set forth in Damiano v. Burge, 481 S.W.2d 562
(Mo. 1972), in which the Supreme Court of Missouri addressed the eligibility of a presidentially pardoned tax offender to obtain a liquor license.[15] Applying Professor Williston's distinction, the court offered the following analysis as a basis for its decision to affirm a trial court's reversal of an agency's rejection of the presidentially pardoned felon's application for a liquor license:
 [T]here is no contention in our case that plaintiff was of bad or even doubtful moral character. On the contrary, the parties here have stipulated that "the sole and exclusive reason for the Director of Liquor Control's refusal to issue petitioner an employee's permit was the alleged conviction"; and defendant further admits in his brief that his refusal to renew plaintiff's permit "was not due to any misconduct on the part of respondent going to respondent's moral fitness." In other words, the defendant here has attempted to reject the application on the very ground which Professor Williston, and the many cases following his view, state cannot be the grounds for refusal.
Id. at 567. The phrase "cannot be the grounds for refusal" in this passage at the very least implies that, in the opinion of certain courts, disqualification based upon a presidentially pardoned conviction encroaches on the president's pardon power. Reinforcing this impression is the court's quoting with approval the following from Commissioner of the Metropolitan DistrictCommission v. Director of Civil Service, 203 N.E.2d 95, 103
(Mass. 1964):
 "General Laws c. 41, § 96A (inserted by St. 1938, c. 342), provides that no person `convicted of any felony shall be appointed as a police officer of a . . . district.' Whatever the legislative purpose behind § 96A may have been, it necessarily has the practical effect of imposing a quasi penal, civil disqualification to be a police officer as an incident of, and automatically following upon, conviction for felony. In the light of the cases from other jurisdictions, already cited, we think that the absolute disqualification or ineligibility, imposed by such a statute, is to be regarded as removed by a full pardon, so that the pardoned person (1) may apply for appointment to the office for which he was formerly disqualified, and (2) may hold that office if he is able to sustain the heavy burden of satisfying the electorate or an appointing authority of his good character and suitability at the time of seeking office. We think also that, in considering such a pardoned applicant's qualifications and suitability, the events underlying the pardoned conviction may be and should be evaluated, and relied upon reasonably, by the proper public body or authority."
481 S.W.2d at 566.
The court further recited various other cases as standing for the proposition that it is unconstitutional for the legislature to classify a pardoned conviction as conclusively showing bad character "so as to make an applicant ineligible for . . . employment." Id. at 566-67, citing Slater v. Olson,299 N.W. 879, 880 (Iowa 1941) (an automatic disqualification from civil service employment for a felon, whether pardoned or not, held to violate the governor's constitutional pardon power); Hogan v.Hartwell, 7 So.2d 889, 892 (Ala. 1942) (notwithstanding constitutional proscription against office-holding by convicted felon, State Board of Pardons and Paroles could restore political eligibility of federally convicted felon);[16] Symonds v.Gualano, 260 N.E.2d 284, 291 (Ill.App. 1970) (constitutional power of governor to grant pardons is not abridged by constitutional provision making persons convicted of infamous crimes ineligible to run for public office); Dean v. Haubrich,83 N.W.2d 451, 456 (Iowa 1957) (governor may under constitution restore eligibility to hold office following federal conviction notwithstanding constitutional clause foreclosing convicted felons from holding office). Without expressly declaring that it considered them unconstitutional, the court in Damiano
acknowledged the Arkansas cases of Irby and Ridgeway (it recited no others) as illustrating "that there exists judicial disagreement with the results expressed in the foregoing cases," concluding, however, that the recited, which it suggested reflect the Williston view, reach "the better result." 481 S.W.2d at 567.
A question remains, then, regarding the extent to which a state, despite the fact of a "full" presidential pardon having issued, might look to the underlying conviction as disqualifying an applicant from licensure. At issue, again, is whether any such state action would encroach upon the president's pardon power by impermissibly imposing "punishment" for the underlying offense. Notwithstanding the sweeping dictum in Garland, it appears clear that a pardon need not be considered an erasure of the slate for any and all purposes — although at least one jurisdiction, Alabama, appears to consider it such. See
discussion of Sokira, supra at n. 17. However, it is less clear whether a state may do what Arkansas is generally imputed to have done in Irby — namely, ignore altogether a presidential pardon of a felon for purposes of determining a candidate's eligibility for a license. In Damiano, which addressed precisely the question at issue in your request — i.e., the effect of a presidential pardon on a felon's eligibility to receive a liquor license — the Missouri Supreme Court appeared to assume both thatIrby would apply within the context of licensure under Arkansas law and that Arkansas' automatic prohibition against licensing even a pardoned felon would offend the federal constitution.[17] The Damiano opinion, of course, has no precedential value for an Arkansas court. It does, however, illustrate that a constitutional issue exists regarding the permissible scope of state regulation when the president has pardoned a felon, and it further helps define what the terms of a debate on that issue might be.
In my opinion, the debate about what effect, if any, a state must give to a presidential pardon within the context of licensure strongly implicates the concept of federalism, which contemplates apportioning government among the federal government and the states. In this regard, the movement since the Civil War away from the Court's broad pronouncements in Garland, which, quite possibly reflecting an impulse to quell the passions of war, seemed to accord unlimited pardon power to the president, may well have been inspired by a later recognition that principles of federalism dictate accommodating, at least up to a certain point, the states' police power to monitor professional and highly regulated activities.[18] Precisely how much latitude a state might exercise in restricting the effects a pardon on licensure eligibility is unclear. On the one extreme, one might maintain that professional licensure is traditionally a matter of state governance, and that, purely as a matter of state law, a licensing authority might in the proper exercise of its authority characterize even a pardoned felony as disqualifying a candidate from eligibility to engage in a given profession. On the other extreme, one might maintain that the president, in the proper exercise of his constitutional authority, is authorized to declare that a particular federal offense will henceforth be treated in all respects as if it had never occurred. As noted above, courts have located the effects of a presidential pardon at various points along the spectrum between these extremes, and I am not inclined to opine that any particular point should be deemed constitutionally offensive.
However, I can and will note that, notwithstanding the occasional suggestions that Irby dictates otherwise, see discussionsupra, the Arkansas Supreme Court has never committed to the proposition that a conviction, even if removed by presidential pardon, can, in and of itself, serve to disqualify an individual from a statutorily required licensure. The scope of the court's ruling in Irby was relatively narrow, providing only that the disqualifications from holding public office set forth in Ark. Const. art. 5, § 9, which include the conviction for embezzlement at issue in that case, cannot be removed by a presidential pardon. 190 Ark. at 796. Specifically, the court made clear that it was concerned only with the restoration of "political privileges," and within this narrow framework, it drew only the following conclusion:
 We think it is obvious, and therefore have no hesitancy in so deciding, that 9 art. 5 or the disqualifications therein announced are no part of the punishment inflicted upon one convicted for embezzling public funds.
Id.
If, as some of the cases discussed above suggest, it might be constitutionally suspect to abridge the president's pardon power by declaring that the mere fact of a conviction, even if pardoned, will serve as a disqualification from holding office or engaging in a particular profession, then the ABC might be constitutionally precluded from denying licensure based solely upon the fact of a prior conviction. I do not, however, consider this conclusion inevitable. The Irby court's declaration that a constitutionally mandated presidential pardon cannot preclude the application of a state constitutional proscription against office-holding, 190 Ark. at 796, does not necessarily mean that a merely statutory condition on licensure will likewise negate the effect of a presidential pardon. In my opinion, this issue, which appears to implicate not only the supremacy clause and the pardon clause but also the whole system of federalism whereby the power to govern is apportioned among the federal government and the states, awaits judicial clarification.
It may well be, as the A.L.R. annotator quoted above suggests, that a reviewing court would apply the same standard in a licensure case as in office-holding cases — extrapolating fromIrby to conclude that the facts showing the applicant committed the offense can always be used despite a presidential pardon, which wipes out the conviction itself. As noted above, in order to survive a supremacy-clause challenge, any such ruling would have to turn on a determination that the disqualification would not amount to an additional "punishment" for the underlying offense. On the other hand, it may be that the Arkansas Supreme Court today would be disinclined to extend Irby by embracing a categorical rule of disqualification from licensure, given that the judicial trend, possibly dictated by the mandates of the supremacy clause, is to engage in a case-by-case inquiry into the nature of the underlying offense — an approach that might accord with principles of federalism and yet preclude a blanket policy classifying any and every pardoned conviction as a disqualification. The possibility of this result might be reinforced by the fact that Irby is an old case (1935) that was vigorously opposed by a 3-justice minority who maintained that a presidential pardon should be given broader effect than the slim majority maintained.
In my opinion, Irby may be somewhat shaky precedent for the proposition that any and every pardoned felony conviction, irrespective of the underlying circumstances, will automatically constitute a disqualifier under Act 1248 of 2005. The possibility exists that a modern court faced with the issue might adopt what appears to be the majority rule, concluding that an executive pardon serves to obliterate the conviction itself but not the guilt associated with the actual commission of the act, leaving an applicant to shoulder the heavy burden of persuading the licensing authority that this guilt should not foreclose his licensure. However, having acknowledged this possibility, I must further note that it has not yet been realized. In my opinion, in accordance with what the A.L.R. commentator quoted above recognizes as the general judicial practice, a reviewing court would in all likelihood hold, based upon the Irby court's ruling, that a presidential pardon does not serve to obliterate the fact of a conviction, meaning that the applicant for a liquor license described in your request would be barred from licensure pursuant to Act 1248 of 2005. Although this interpretation of the law might be subject to constitutional challenge based upon the supremacy clause, in rendering my opinion, I am bound by the proposition that statutes are presumed constitutional and that the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999). Accordingly, although the issue is not entirely free from doubt, I believe the applicant you describe is ineligible to receive a liquor license.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] As noted in your factual recitation, the exceptions set forth in subsections (b) and (c) are not pertinent to your request.
[2] Following my issuance of this opinion, the Arkansas Supreme Court in dictum addressed the same issue in Doe v. ArkansasDepartment of Human Services, 357 Ark. 413, 182 S.W.3d 107
(2004). The court in Doe held that the plaintiffs were not entitled to preliminary relief against the Department of Human Services' Office of Long Term Care ("OLTC"), which had adopted a policy of considering expunged criminal records in making determinations regarding employment in nursing homes, because the plaintiffs did not face the risk of irreparable harm. Id. at 417. Having reached this conclusion, the court further noted that under A.C.A. § 16-19-902(a) an individual whose record has been expunged will have "`all privileges restored . . . unlessotherwise specified by law.'" Id. at 418 (emphasis added by court). In dictum, the court offered the following comment regarding the application of this statute:
 [W]e note Doe and Roe's argument that the State is clearly in violation of Ark. Code Ann. § 16-90-902
(Supp. 2001) and Arkansas public policy. Citing McClish v. State, 331 Ark. 295, 962 S.W.2d 332
(1998), they argue that it is obvious that Arkansas has adopted a "second chance" policy to provide certain, eligible individuals a clean slate to make a positive contribution to society. They further contend that there is nothing in § 22-33-205 that provides the OLTC authority to act contrary to this policy. Their argument, however, ignores the express purpose of § 20-33-205 of Arkansas's Elder Care law, which recognizes that sometimes persons providing care to the elderly or individuals with disabilities have criminal histories that impair their ability to provide adequate care. See Emergency Clause of Act 990 of 1997. Here, the General Assembly specifically enumerated those criminal offenses that disqualify a person or ElderChoices provider; those offenses include theft of property, which was the offense committed by Doe and Roe. See Ark. Code Ann. § 20-33-205(a)(3)(A), (B) and (b)(24) (Supp. 2003). It is within the General Assembly's authority to change or amend laws and public policy in this matter. See Nabholz Constr. Corp. v. Graham, 319 Ark. 396, 892 S.W.2d 456 (1995).
The court's conclusions are in all respects consistent with those I offered in Opinion No. 2003-183.
[3] The supremacy clause provides:
 This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
[4] The influence of Professor Williston's article is difficult to overstate. In Fletcher 2006 WL 1358467 at *22, one member of the Kentucky Supreme Court remarked:
 A law review article authored by Professor Williston put the Garland dictum to rest. . . . "The fundamental distinction suggested by Professor Williston has been generally accepted and followed by the courts since the date of his article." Damiano v. Burge, 481 S.W.2d 562, 565 (Mo.Ct.App. 1972)." The parties have not cited, and our research has not disclosed, a single decision by any federal, state, or other court . . . which has rejected Professor Williston's reasoning." [In re] Abrams, 689 A.2d [6 (D.C. 1997], at 11.
A Westlaw search reveals that Professor's Williston's article has been recited by courts as authority on this issue on at least 45 occasions.
[5] The court in Guastello applied the second standard outlined in the annotation excerpted above, affirming a trial court's reversal of the denial of a liquor license to a gubernatorially pardoned felon convicted of purveying liquor on Sundays. 536 S.W.2d at 25. The parties conceded that the sole basis for the denial had been the fact of the conviction, guilt not having been recited as an issue. Id. at 22.
[6] With respect to the presumption of guilt inherent in a constitutional proscription of the sort reflected in Ark. Const. art. 5, § 9, one commentator has noted:
 The plain language of article 5 renders any person convicted of an "infamous crime" ineligible for public office. . . . It has been held that these types of provisions were enacted to ensure that public officeholders possess good character in order to be eligible for public office.
Elana Cunningham Wills, Constitutional Crisis: Can the Governor(or Other State Officeholder) Be Removed from Office in a CourtAction After Being Convicted of a Felony?, 50 Ark. L. Rev. 221, 230 (1997), citing Wier, supra; 67 C.J.S. Officers § 22(b) (1978). As this comment suggests, the presumption of unfitness in this constitutional proscription is irrebuttable.
[7] In a strong dissent joined by Justices Smith and McHaney, Justice Butler addressed this punishment/consequences distinction as follows:
 For the majority to say that ineligibility to hold office, denounced by 9 of art. 5 on one convicted of crime, is no part of the punishment inflicted is to state a proposition, the truth of which is difficult to perceive, and, save to the mind of a casuist, no argument however adroit and subtle can convince. As well to say that pain is but a figment of the imagination and the pangs attendant upon dissolution are no part of the article of death as to argue that the infamy resulting from the commission of crime and its disabling effect is no part of the penalty the offender must pay.
190 Ark. at 808.
[8] The dissent in Irby appears to have agreed that the effect of a presidential pardon would be the same as that of a gubernatorial pardon, although it disagreed as to what that effect would be under Arkansas law, with the dissent arguing that the effect of a pardon should be absolute exoneration in all respects. 190 Ark. at 798-809.
[9] In what may be the most recent judicial pronouncement to this effect, one member of the Kentucky Supreme Court observed as follows:
 In fact, the holding in Garland was that refusal to permit the pardoned attorney to practice law before the Supreme Court (the only issue in Garland) would impermissibly punish him for the pardoned offense (joining the Confederacy), not that the offense had been" blotted out." In re North, 62 F.3d 1434, 1437
(D.C. Dir. 1994).
Fletcher v. Graham, No. 2005-SC-1009-MR, 2006 WL 1358467 at *22 (Ky. May 18, 2006), Cooper, J., concurring in part and dissenting in part.
[10] At issue in Bjerkan was whether a presidential pardon of a convicted draft evader mooted his pending petition for habeas corpus relief. In addressing this question, the court considered whether the full pardon had in fact eliminated all "collateral consequences" of the conviction. 529 F.2d at 126, citing Carafasv. La Vallee, 391 U.S. 234 (1968) (holding that a habeas action was not moot nor was jurisdiction defeated when a released prisoner, because of the fact of his conviction, still faced such consequences as the inability to engage in certain professions, to vote or to serve as a juror). "[T]he difficult question," the court noted, "is whether a federal pardon restores petitioner's state civil rights." Id. at 127.
Specifically with respect to state restrictions based upon a pardoned federal conviction, the court offered the following conclusions:
 In regard to the pardon power, the President's sphere is limited. He can only pardon those offenses which are "against the United States." But in this sphere, his power, like any constitutional power, must be supreme. It cannot be hindered by the operation of the subordinate governments. The pardon power would be ineffective if it could only restore a convict's federal civil rights. The pardoned person would still suffer numerous handicaps and would not receive the benefits of what the President in granting a full pardon would seem to intend — that the person be reinstated to his full rights as a citizen. . . . [T]he power to punish for a conviction which has been pardoned is the power to vitiate and destroy a presidential pardon. For these reasons, we conclude that a presidential pardon restores states as well as federal civil rights.
529 F.2d at 128. Based upon the preclusive effect of a presidential pardon, the court in Bjerkan concluded that the habeas corpus petition was moot and hence remanded with directions that it be dismissed. Id. at 129.
[11] This office has on various occasions likewise opined that a pardoned conviction would nevertheless disqualify an individual from service as a law enforcement officer. Ark. Ops. Att'y Gen. Nos. 94-148; 89-056 and 83-217.
[12] As regards the authority of a legislature to enact such legislation restricting the effects of a pardon, in State v.Moore, 847 So.2d 53, 54 (La.App. 2003), quoting State v.Wiggins, 4432 So.2d 234, 237 (La. 1983), the Louisiana Court of Appeals observed: "`Surely, the legislature has the authority under its police power to limit the "rights of citizenship" restored by an automatic [constitutionally authorized] pardon. . . .'" (Brackets mine.)
With respect to the possible separation-of-powers implications of a court or a legislature restricting the effects of a full state pardon, in Sandlin v. Criminal Justice Standards andTraining Commission, 531 So.2d 1344, 1346 (Fla. 1988), the Florida Supreme Court offered the following analysis:
 Persons seeking to practice certain professions or employments . . . can be required to demonstrate their good moral character, even though they may have been fully pardoned for previous crimes. [Citations omitted.]
By contrast, the court in Irby intimated that the police power, exercised in the interests of "`the welfare of the community,'" supports "`[t]he presumption . . . that one rendered infamous by conviction of a felony, or other base offense, indicative of great moral turpitude, is unfit to exercise the privilege of suffrage, or to hold office. . . .'" 190 Ark. at 795 (quotingState v. Langer, 256 N.W. 377 (N.D. 1934)).
[13] Annotation, Eligibility for Public Office After Pardon,
58 A.L.R.3d 1191, 1195 (1974).
[14] I am not entirely persuaded that this formulation adequately distinguishes between the second and third alternatives discussed above. In both instances, one might accurately say that "a pardon removes punishment, but not moral guilt." What distinguishes the second category from the third, in which a pardoned conviction is nevertheless an automatic disqualifier, is that in the third group the presumption of disqualifying moral guilt is irrebuttable, whereas in the second group it is not.
[15] Specifically, the court couched the question as follows: "Does the Presidential Pardon restore petitioner to his original position prior to the date of that conviction with regard to his application for a liquor permit or license?" Id. at 564.
[16] In Sokira v. Burr, 580 So.2d 1340, 1344-45 (Ala. 1991), the Alabama Supreme Court reaffirmed its holding in Hogan,
which had been overruled by Mason v. State, 103 So.2d 341
(1958), and expressly adopted the Garland standard, thus establishing that under Alabama law a pardon obliterates both punishment and guilt.
[17] Damiano preceded by decades the enactment of A.C.A. §3-2-103, so the court could not directly address the constitutionality of any Arkansas statute relating to felony convictions and the issuance of liquor licenses.
[18] A similar recognition of the scope and effect of the police power may have prompted the court's pronouncement in InRe: Petition of Anderson, 312 Ark. 447, 451-52, 455-56,851 S.W.2d 408 (1993), that a purported gubernatorial pardon cannot qualify the court's constitutional obligation, pursuant to Ark. Const. amend. 28, to monitor the practice of law in the state. ("The power of the executive branch to grant pardons does not limit the constitutional power of this court to regulate the legal profession."). Accord Abrams, 689 A,2d at 10-11
(rejecting the argument that Garland precluded a presidentially pardoned felon from being subjected to bar discipline, noting that Professor Williston's variation on the Garland dictum which allows for a consideration of surviving guilt is the "overwhelming trend").